# EXHIBIT 3



# BIG 12 CONFERENCE

## CONFERENCE HANDBOOK

### 2025-26

# TABLE OF CONTENTS

## BYLAWS

I.I.  Offices. .......................................................I

I.2  Membership.......................................................I
    I.2.I  Name .. ...........................................I
    I.2.2  Membership ....................................I
    I.2.3  Agreement to Membership ............I
    I.2.4  Qualification....................................I

I.3  Mission & Institutional Responsibility ...2
    I.3.I  Mission ....... ...............................2
    I.3.2  Adherence to NCAA and College
    Sports Commission Rules ...........................2
        I.3.2.I  Compliance Reviews ........2

I.4  Members.................................................2-3
    I.4.I  Rights of Members.........................2

I.5  Directors .................................................3-7
    I.5.I  General Powers ..............................3
    I.5.2  Actions Requiring the Vote of
        a Majority of Disinterested
        Directors and a Supermajority
        of Disinterested
        Directors ..................................... . ..3
    I.5.3  Number and Election
        Term ......................................................5
    I.5.4  Vacancies...........................................6
    I.5.5  Substitutes for Directors.................6
    I.5.6  Compensation.................................7

I.6  Meetings of the Board of Directors.. .7-IO
    I.6.I  Annual Meetings .............................7
    I.6.2  Regular Meetings ...........................7
    I.6.3  Special Meetings.............................7
    I.6.4  Form of Meeting & Notice..............7
    I.6.5  Place of Meeting..............................8
    I.6.6  Conduct of Meeting........................8
    I.6.7  Quorum ............................................8
    I.6.8  Actions of the Board of
        Directors Without Meeting............9
    I.6.9  Participation.....................................9
    I.6.IO  Committees......................................9
    I.6.II  Executive Committees............. .....9
    I.6.I2  Finance, Budget, and Audit
        Committee.......................................IO
    I.6.I3  Written Signatures, Consents
        or Agreements.................................IO

I.7  Officers.................................................IO-I3
    I.7.I  Number.............................................IO
    I.7.2  Appointment and Term of Office...IO
    I.7.3  Vacancies........................................II
    I.7.4  Removal; Resignation.....................II
    I.7.5  The Chair of the Board and
        Vice-Chair of the Board .................II

I.7.6  The Commissioner............................II
I.7.7  Deputy Commissioner or C-Level
    Executive ................................... ....II
I.7.8  The Secretary/Treasurer ..............I2
I.7.9  The Assistant Secretary
    and Assistant Treasurer.................I2
I.7.IO  Subordinate Officers.......................I2
I.7.II  Compensation............................ ......I3

I.8  Contracts, Loans, Checks & Deposits...I3
    I.8.I  Contracts, Deeds and
        Other Instruments.........................I3
    I.8.2  Loans ...............................................I3
    I.8.3  Checks, Drafts and
        Other Documents..........................I3
    I.8.4  Deposits...........................................I3

I.9  Fiscal Year...............................................I3

I.IO  Amendments.........................................I3

I.II  Incentive Plans ...........................................I4

I.I2  Indemnity Policy ........................................I4

I.I3  Miscellaneous Provisions ..................I4-I5
    I.I3.I  Books and Records ........................I4
    I.I3.2  Inspection of Bylaws......................I4
    I.I3.3  Notice...............................................I4
    I.I3.4  Execution of Documents...............I5
    I.I3.5  Annual Report.................................I5

2  Budget and Distribution Policy .........I6-I7
    2.I  Budget Approval..............................I6
    2.2  Member Assessments ....................I6
    2.3  Revenue Distribution......................I6
        2.3.I  Payment of Member
            Subsidies and Member-
            Designated Revenue ..............I6
        2.3.2  Equal Distribution of All Other
            Net Distributable............... ......I6
    2.4  Adjustment of Revenue
        Distribution Upon Telecast of
        More Than One Football Game
        on Permitted Member Institution
        Outlet..................................................I6
    2.5  Conference Assets and
        Reserves ...................................... I7

3  Withdrawal and Sanctions................ I8-20
    3.I  Withdrawal ....................................I8
    3.2  Withdrawing Member................. I8
    3.3  Notice Date and Interim
        Period................................................I8
    3.4  Buyout Amount...............................I9
    3.5  Effect of Withdrawal......................20
    3.6  Sanction of a Member...................20

**TABLE OF CONTENTS**

**4    Permitted Member Institution Outlets.............................................21**

## RULES

**5    Organization.........................................22-30**

5.1    Organization......................................22

5.1.1    Board of Directors ...................22

5.1.2    Faculty Athletics Representatives.........................22

5.1.3    Athletics Directors.....................23

5.1.4    Senior Woman Administrators.........................23

5.1.5    Noncontroversial Recommendations...................24

5.2    Chair and Vice Chair of Each Advisory Committee........................24

5.3    Procedures for Meetings of Advisory Committees ..................25

5.3.1    Agenda Items.............................25

5.3.2    Substitutions.............................25

5.3.3    Annual Meetings....................25

5.3.4    Regular Meetings....................25

5.3.5    Special Meetings ....................25

5.3.6    Joint Council Meetings..........25

5.3.7    Board of Directors-Joint Council Meetings.................................26

5.3.8    Enactment of Conference Rules.........................................26

5.3.9    Notice ........................................26

5.3.10    Place of Meeting.......................26

5.3.11    Conduct of Meeting...............26

5.3.12    Quorum.......................................26

5.3.13    Participation ............................27

5.3.14    Actions Without a Meeting ...............................27

5.4    Standing Committees .....................27

5.4.1    Procedures for Meetings........27

5.4.2    Nominating Committee ..........27

5.4.3    Finance, Budget, and Audit Committee..................................27

5.4.4    Student-Athlete Standing Committees................................28

5.4.4.1    Student-Athlete Advisory Committee...................28

5.4.4.2    Leadership Innovation Future Team...............28

5.4.5    Student-Athlete Health and Wellbeing Advisory Group.....29

5.4.6    Academic Performance Research....................................29

5.5    Conference Meeting Expenses........................................29

5.5.1    Expenses of Faculty Athletics Representatives, Athletics Directors and Senior Woman Administrators..........................29

5.5.2    Expenses of Coaches and Administrative Staff Members ...................................29

5.5.3    Exception ..................................29

5.6    Coaches' Meetings..........................29

5.6.1    Head Coaches Mandatory Attendance Requirements.....30

5.7    Athletics Directors and Senior Woman Administrators Mandatory Attendance Requirements.....................................30

5.8    Administrative Group Meetings....30

5.9    Meetings with the Athletics Directors...........................................30

5.10    Expenses ..........................................30

5.11    Chairship .........................................30

5.12    Agenda Items ..................................30

**6    Eligibility .............................................31-34**

6.1    Eligibility Rules ................................31

6.1.1    Exception ..................................31

6.2    Qualifiers and Nonqualifiers...........31

6.2.1    Initial Enrollees.........................31

6.2.2    Summer Term Prior to Initial Full-Time Enrollment Exception.....31

6.2.3    Initial Eligibility Core-Curriculum Requirements Prior to Initial Full-Time Enrollment Exception ..................................31

6.2.4    Previously-Approved Initial-Eligibility Waiver Exception ...31

6.2.5    Transfer Requirements.............31

6.2.5.1    Four-Year College Transfers.........................31

6.2.5.1.1    2-4-4 Transfers...............32

6.2.5.2    International Institution Transfers......................32

6.2.5.3    Two-Year College Transfers .....................32

6.2.5.3.1    Nonqualifiers ......32

6.2.5.3.2    Academic Redshirts...............32

6.3    Hardship Waivers ............................33

6.4    Certification .....................................33

6.4.1    Certification of Eligibility .......33

6.4.2    Eligibility Reports......................33

6.4.3    Financial Aid Reports...............33

6.4.4    Participation Reports ............33

6.4.5    Accuracy of Certifications.....33

# TABLE OF CONTENTS

6.5    Recruiting Code of Conduct...........33

6.6    Disciplinary Standards for Current Student-Athletes ............ 34

6.7    Disciplinary Standards for Prospective Student-Athletes..... 34

6.8    Compliance ..................................... 34

6.9    Serious Misconduct Defined....... 34

7    Interpretations and Enforcement of Rules..............................................35-36

7.1    Interpretations of Rules .............. 35

7.2    Self-Reporting NCAA Violations...........................................35

7.2.1    Level III Violations ................. 35

7.2.2    Potential Major Violations..................................35

7.3    Reporting Alleged Violations by Another Member Institution .........................................35

7.3.1    Reporting................................. 35

7.3.2    Findings.................................... 35

7.3.3    Commissioner Review........... 36

7.4    Ineligible Participation.................. 36

7.5    NCAA Sanctions............................36

7.5.1    Payment of Fines ................... 36

7.6    Waivers/Exceptions...................... 36

7.7    Special Cases................................. 36

7.8    Enforcement................................... 36

8    Drug Testing................................................37

9    Championships and Schedules.........38-39

9.1    Championship Dates and Sites... 38

9.2    Schedules and Competition..........38

9.3    Postponed, Canceled and Forfeited Contests...........................................38

9.4    Grounds ......................................... 39

9.5    Scheduling Obligations............ ..... 39

10    Sports Regulations ...........................40-43

10.1    Sponsorship of Intercollegiate Sports................................... .......40

10.1.1    Conference Championship Sports Requirements ............. 40

10.1.2    Notification Provision..............40

10.2    Principles and Standards of Sportsmanship............................41

10.3    Administrative Sports Manuals ....41

10.3.1    Delivery and Effect ..................41

10.3.2    Violations and Sanctions for Violations  ..................... .......41

10.4    Travel Squad Restrictions..............41

10.4.1    Regular Season Competition in Football...... ......................... .......41

10.4.1.1    One-Time Regular Season and Championship Exception .......................41

10.4.1.2    Final Year of Eligibility and Medically Unable to Compete Due to Incapacitating Injury or Illness Exception ......... 42

10.4.2    Regular Season Competition in Sports Other Than Football....42

10.4.2.1    Baseball and Tennis Exception ................... ..42

10.4.3    Conference Championship in Sports Other Than Football....42

10.4.4    Restrictions.............................43

10.4.4.1    Neutral Site Competition............... . 43

10.4.4.2    Swimming and Diving Exception ................... 43

11    Sportsmanship and Ethical Conduct ................................44-47

11.1    Principles of Sportsmanship and Standards for Conduct...........44

11.2    General Statements of Responsibility...................................44

11.2.1    Institutional Responsibility ........................ 44

11.2.2    Athletics Department Responsibility ........................ 44

11.2.3    Game Management Responsibility ........................ 44

11.2.4    Coach Responsibility..............44

11.2.5    Conference Responsibility ... 45

11.3    Violations...................................... 45

11.3.1    Verbal or Physical Abuse..................................... 45

11.3.2    Comments About Officiating............................... 45

11.3.3    Comments About Other Members..................................45

11.3.4    Court and Field Storming ..... 45

11.3.5    Other Misconduct.................. 45

11.4    Processing of Possible Violations........................................45

11.4.1    Report of Commissioner.........46

11.4.2    Response by Institution..........46

11.4.3    Final Decision by the Commissioner......................... 46

11.4.4    Delegation of Authority and Timing Waiver ....................... 46

11.4.5    Penalties ................................ 46

11.4.6    Violation by a Director of the Board, Other Institutional

G

**TABLE OF CONTENTS**

Personnel, Institutional
Board Member......................... 46

II.5    Appeals ...........................................46

II.5.1    Appeal Hearing.........................47

II.5.1.1    Information Considered
by Board......................... 47

II.5.1.2    Hearing Process......... 47

II.5.2    Final Decision ............. 47

II.6    Processing Sportsmanship
Violations During Conference
Championship................................ 47

12    **Governance Structure............................48**

## GENERAL INFORMATION

**Policy on Gender Equity** ......................................50
**Policy on Diversity**................................................51

# BYLAWS



# BYLAWS

## SECTION 1.1- OFFICES

1.1 <u>Offices</u>. The principal office of The Big 12 Conference, Inc., a Delaware corporation (the "Conference"), is 5215 N. O'Connor Blvd., Suite 1650, Irving, Texas, 75039, or such other location as the Board of Directors (as defined below) may designate from time to time (the "Principal Office").

## SECTION 1.2- MEMBERSHIP

1.2.1 <u>Name</u>. The legal name of the Conference is The Big 12 Conference, Inc.

1.2.2 <u>Membership</u>. The members of the Conference (each a "Member" and together, the "Members") effective as of August 2, 2024, are:

| | |
|---|---|
| University of Arizona | Iowa State University |
| Arizona State University | University of Kansas |
| Baylor University | Kansas State University |
| Brigham Young University | Oklahoma State University |
| University of Central Florida | Texas Christian University |
| University of Cincinnati | Texas Tech University |
| University of Colorado | University of Utah |
| University of Houston | West Virginia University |

1.2.3 <u>Agreement to Membership</u>. Each Member agrees with the Conference and with each of the other Members to remain a member of the Conference until the later of (i) June 30, 2031 (the expiration of the Conference's Second Amended and Restated Grant of Rights) as of the date of adoption of this Bylaw or (ii) such later date as is the expiration date of any future Grant of Rights that each Member may enter into with the Conference. As used herein the term "Grant of Rights" shall mean any agreement, including any subsequent amendments and restatements thereof, that grants to the Conference all rights necessary for the Conference to perform its contractual obligations set forth in its Media Rights Agreements, and the term "Media Rights Agreement" shall mean any agreement or agreements that grant the right to one or more third parties to distribute audio and video productions of at least a majority of the regular-season varsity football and men' and women's basketball games involving at least one of its Members via any means of distribution.

1.2.4 <u>Qualification</u>. All Members of the Conference shall be institutions of higher education that hold Division I membership in the National Collegiate Athletic Association ("NCAA"), that support the mission of the Conference, and that meet the qualifications set forth in the Amended and Restated Certificate of Incorporation of the Conference (as amended from time to time, the "Certificate"), these Bylaws (as defined below), and the Rules (as defined below). Sections 1, 2, 3 and 4 hereof shall together constitute the Bylaws of the Conference (the "Bylaws") and shall not be altered, amended, or repealed except in accordance

1

with Section 1.10 hereof.  Sections 5 et. seq. thereafter (the "Rules") as amended from time to time hereafter, shall constitute the Rules as that term is used herein and may be adopted and amended as provided therein.

## SECTION I.3- MISSION AND INSTITUTIONAL RESPONSIBILITY

1.3.1    <u>Mission</u>. The mission of the Conference is to:

1.3.1.1    Advance standards of scholarship, sportsmanship and equity consistent with the highest ideals of Conference membership.

1.3.1.2    Support the development of national-championship caliber intercollegiate athletic programs.

1.3.1.3    Organize, promote and administer intercollegiate athletics among its member institutions.

1.3.1.4    Optimize revenues and provide supporting services compatible with both academic and competitive excellence.

1.3.1.5    Encourage collaboration in areas beyond athletics that builds good-will between institutions and promotes the overall missions of the universities.

1.3.2    <u>Adherence to NCAA and College Sports Commission Rules</u>.  All Members of the Conference are committed to complying with NCAA and College Sports Commission rules and policies. Accordingly, Members shall demonstrate institutional control and ensure that authority for the intercollegiate athletics program is vested in the campus chief executive officer of such Member. In addition, the conduct of Members shall be fully committed to compliance with the rules and regulations of the NCAA, the College Sports Commission, and of the Conference. Each Member accepts the primary responsibility for the administration of rules and regulations, for investigating known or alleged violations at that institution, and for taking prompt and effective corrective actions where violations have occurred. On a regular basis, the Conference, through its Commissioner and others designated by the Commissioner, shall provide information and instructions to institutional personnel to assist the Members in their efforts to administer and enforce NCAA and College Sports Commission rules and regulations.

1.3.2.1    <u>Compliance Reviews</u>. To further assist each Member in maintaining institutional control, the Conference, in cooperation with an outside firm, shall review or provide relevant programming to each institutional compliance program on a regular basis. The specific procedures for the review shall be developed by the Conference.

## SECTION I.4- MEMBERS

1.4.1    <u>Rights of Members</u>.  Except for any Member that has Withdrawn (as defined below), or is subject to Sanctions (as defined below) to the contrary with respect

2



to any right, each Member, in its capacity as a member of the Conference, shall have the right and obligation, and only the right, to: (i) certify to the Conference the name of its Chief Executive Officer (as defined below) and have such individual automatically appointed to serve as a Director on the Board of Directors; (ii) receive distributions of Conference revenue in accordance with these Bylaws and the Rules; and (iii) participate in Conference athletic events in accordance with these Bylaws and the Rules.

## SECTION I.5- DIRECTORS

1.5.1    <u>General Powers</u>.  Subject to any limitations of these Bylaws, of the Certificate, and of the General Corporation Law of Delaware, as it may be amended from time to time hereafter (the "DGCL"), as to actions that shall be authorized or approved by the Members, all corporate powers shall be exercised by or under the authority of, and the business and affairs of the Conference shall be managed by the Board of Directors in accordance with these Bylaws.

    1.5.1.1    Except as set forth in Section 1.5.2 below, the Board of Directors may take action on any matter in accordance with these Bylaws by: (i) written consent signed by all Directors who are Disinterested Directors (as defined below) with respect to the matter being voted on, in accordance with Section 1.6.8 below; or (ii) the affirmative vote of a majority of the Disinterested Directors Entitled to Vote (as defined below) Present (as defined below) at a duly called meeting at which a quorum is Present in accordance with Section 1.6.7 below.

1.5.2    <u>Actions Requiring the Vote of a Majority of Disinterested Directors and a Supermajority of Disinterested Directors</u>.

    (a)    The following actions may be taken only if approved by the affirmative vote of a Majority of Disinterested Directors (as defined below):

        (1)    Development and revision of long-range plans for the Conference;

        (2)    Approval of any contract of the Conference that can be expected to involve more than ten percent (10%) of the income or expenditures for the Conference for a fiscal year;

        (3)    Hiring, termination, and the employment (including approval of the terms of any employment agreement) of the Commissioner of the Conference;

        (4)    Approval of the operating budget of the Conference for each fiscal year;

        (5)    Initiation or settlement of any litigation involving the Conference;

        (6)    Selection and discharge of the accounting and law firms for the Conference; and

        (7)    Selection of the location of the headquarters of the Conference, including the location of the real estate and approval of real estate leases.

3

(b) The following actions may be taken only if approved by the affirmative vote of a Supermajority of Disinterested Directors (as defined below):

(1) Amendments or modifications to the role and authority of the Board of Directors and the Advisory Committees (as defined in the Rules);

(2) The dissolution, liquidation, winding-up, merger, sale, or transfer of all or substantially all of the assets of the Conference;

(3) Admission of a new Member or amendment of Section 1.2.2, 1.2.3, or 1.2.4 above;

(4) Sanction of any Member, as set forth in Section 3 below;

(5) Any action with respect to a Withdrawing Member as set forth in Section 3 below;

(6) Approval or modification of contracts for the provision of teams to bowl games in intercollegiate football; and

(7) Approval or modification of: (i) Section 2 below or any other policies and procedures relating to the revenue distribution to the Members; and (ii) the establishment and funding of, terms or, maintenance of, and release or dissolution of, any reserves funded with Conference assets or revenues pursuant to Section 2.5 below.

1.5.2.2    As used in these Bylaws, the following terms shall apply:

(a) The term "Disinterested Director(s)" with respect to any issue shall mean each person who: (i) is then duly qualified and serving as a member of the Board of Directors pursuant to Sections 1.5.3 and 1.5.4 below; (ii) is the Director representative of a Member that has not Withdrawn and has not been precluded from voting on the matter in question as a Sanctioned Member; and (iii) is not an Interested Director (as defined below) with respect to such issue.

(b) The term "Disinterested Director(s) Entitled to Vote" with respect to any issue shall mean each Disinterested Director who: (i) is Present at a duly called meeting at which such issue is to be considered; or (ii) signs a written consent with respect to such issue in accordance with Section 1.6.8 below.

(c) The term "Interested Director(s)" with respect to any issue means any Director who has personally, or as to which the Member that such Director represents has institutionally, a direct or indirect material interest in the subject matter of the issue (or series of related issues) being considered by the Board of Directors, that, in the judgment of a majority of the other Directors who are not Interested Directors with respect to such issue or series related issues, could reasonably be expected to impact adversely the objectivity of such Director in voting on such issue or issues. The

4



interests that all Members have in common as the beneficial members of the Conference (even if such interests have disparate effects among Members) will not, in and of itself, cause the Director representing such Member to be an Interested Director with respect to an issue or issues impacting all Members as the beneficial members of the Conference. Any Director who has been determined to be an "Interested Director" in accordance with the foregoing may appeal such determination only in accordance with the following: (i) such Director shall submit a written appeal to the Commissioner and the highest ranking officer of the Board of Directors who has not been determined to be an Interested Director with respect to such issue, if any; (ii) the Commissioner and such highest ranking officer (if any) shall mutually determine and promptly notify such Interested Director with respect to their (or if there is no such officer, the Commissioner's) determination on the matter, which determination shall set forth whether such Director is deemed to be an "Interested Director" on the matter in question; and (iii) the determination made by the Commissioner and any such highest ranking officer of the Board of Directors shall be final and binding on the Director(s) appealing the initial determination by the other Directors.

(d)  The term "Majority of Disinterested Directors" with respect to any issue shall mean a majority of all persons who are Disinterested Directors with respect to such issue, whether or not they are Present at a meeting considering such issue or sign a written consent with respect to such issue.

(e)  The terms "Present" or "Presence" as used in these Bylaws with respect to any meeting of the Board of Directors or a meeting of a committee designated by the Board of Directors shall mean participation by a person in person at or by means of Remote Access (as defined below) in the meeting.

(f)  The term "Supermajority of Disinterested Directors" with respect to any issue shall mean seventy-five percent (75%) or more of all persons who are Disinterested Directors with respect to such issue, whether or not each is Present at a meeting considering such issue or signs a written consent with respect to such issue.

1.5.3    **Number, Election and Term**.  The number of members of the Board of Directors of the Conference (the "Board of Directors") shall equal the number of Members in the Conference that have not Withdrawn or are subject to Sanctions that preclude representation on the Board of Directors, consisting of one (1) representative for each such Member, who shall be the most senior campus executive officer (President or Chancellor) (the "Chief Executive Officer") of each Member. Prior to each Annual Meeting (as defined below) held pursuant to Section 1.6.1, each Member shall certify to the Conference the name of its Chief Executive Officer and such person shall be automatically appointed as a Director as provided in these Bylaws and shall hold office until his or her successor has been appointed; provided, however, that each Member shall be deemed to have certified to the

5



Conference that there has been no change in its Chief Executive Officer then serving on the Board of Directors if the Conference does not receive such certification at or prior to an Annual Meeting. Such appointment is automatic and no other vote or action of the Members or Directors shall be required to elect or appoint as a Director the individual certified as the Chief Executive Officer of a Member. Because of the special relationship of the Directors to the Members, a Director may not be removed as long as the Director is the Chief Executive Officer of a Member.

1.5.4    <u>Vacancies</u>.  In the case of a Director's death, disqualification, resignation or removal from office as the Chief Executive Officer of a Member (excluding Directors representing Members that have Withdrawn or are subject to Sanctions that preclude representation on the Board of Directors) then (i) such Director shall thereafter no longer be a Director or member of the Board of Directors for any purpose (without the need for any additional action by the Board of Directors or the Conference) and (ii) the Member whose Chief Executive Officer created such vacancy shall as soon as is reasonably possible thereafter certify to the Conference the name of its successor Chief Executive Officer and such person shall be automatically appointed to serve as a Director; provided, however, that for the period beginning on the date such vacancy was created and the date on which a new Chief Executive Officer of such Member is hired, certified and appointed as a Director, the Member may appoint an individual to serve as the Member's Director representative in such interim period. Similarly, in the event the number of Directors is increased due to an increase in the number of Members, the additional Member(s) shall certify to the Conference the name of its Chief Executive Officer and such person(s) shall be automatically appointed to serve as a Director(s) and shall serve until his or her successor has been appointed.

1.5.5    <u>Substitutes for Directors</u>.  It is the intent of all Members that persons elected as Directors fulfill their fiduciary duties of care by attending meetings and otherwise participating in Board of Directors and Committee (as defined below) meetings to the maximum extent possible and that Directors shall not act by proxy. However, the Members acknowledge that from time to time, legitimate reasons may cause an elected Director to be unable to be Present at a given Board of Directors or Committee meeting. In such events, to avoid disenfranchisement of the Member at that meeting, the Members authorize the Commissioner, after consultation with the Director in question, in the Commissioner's sole discretion (subject to a contrary determination by the Executive Committee), to consider authorizing that Director to appoint a substitute (a "Substitute") to participate as the Director representing such Member at a given Annual Meeting, Regular Meeting (as defined below), or Special Meeting (as defined below) to act in the Director's stead at such meeting. In the event that the Commissioner approves the appointment of a Substitute Director for such meeting, the Director who will be absent will be deemed to resign from the Board of Directors for such meeting and the Substitute representative shall be deemed to be appointed to serve on the Board of Directors for purposes of such meeting only, without the need for further action by the Board of Directors, and all such Substitutes shall count as Directors for purposes of establishing a quorum, determining votes, and for all other purposes at such meeting, except as set forth in Section 1.5.5.2 below. At the conclusion of such

6

meeting, the Substitute shall be deemed to have resigned and the original Director to have been reappointed to his or her position effective as of the adjournment of such meeting.

1.5.5.1    Each Substitute appointed pursuant to Section 1.5.5 and each interim Director appointed pursuant to Section 1.5.4 above must be a senior administrator or academic officer of the Member that he or she is being appointed to represent, but may not be a member of the other governance groups of the Conference appointed pursuant to Section 5.1 of the Rules.

1.5.5.2    No action may be taken by the Board of Directors or any Committee at any meeting if it is not approved by a majority of the Disinterested Directors Entitled to Vote, excluding in both the numerator and denominator of this calculation any Substitutes participating in such meeting.

1.5.6    <u>Compensation</u>.  Directors shall not receive compensation for their services. Each Member will pay the expenses of its Director with respect to matters of the Conference, including but not limited to attendance at meetings of the Board of Directors.

## SECTION I.6- MEETINGS OF THE BOARD OF DIRECTORS

1.6.1    <u>Annual Meetings</u>.  At least one (1) meeting each fiscal year (each an "Annual Meeting") of the Board of Directors shall be held at such time and place as may be fixed by the Board of Directors. The Annual Meeting shall be held in May or June of each year unless otherwise approved by the Board of Directors.

1.6.2    <u>Regular Meetings</u>.  Regular meetings of the Board of Directors shall be held at such times as approved by the Board of Directors (each a "Regular Meeting").  In addition to the Annual Meeting of the Board of Directors, there shall be at least one (1) Regular Meeting of the Board of Directors each fiscal year.

1.6.3    <u>Special Meetings</u>.  Special meetings of the Board of Directors may be called by or at the request of the Chair of the Board (as defined below), the Executive Committee, or forty percent (40%) or more of the Disinterested Directors with respect to the matters to be considered at such meeting (each a "Special Meeting"), notice for which shall be given in accordance with Section 1.6.4 below.

1.6.4    <u>Form of Meetings and Notice</u>.  Any meeting of the Board of Directors may be held (i) in person or (ii) by teleconference, video-conference, webinar, internet online meeting, or similar communication equipment or platforms, or any combination of the foregoing, as long as all persons participating in the meeting can speak to and be heard by each other person (such means of access listed in this clause (ii) being referred to herein as "Remote Access").

1.6.4.1    Notice of any meeting ("Notice") shall be given no later than the close of regular business at the Conference's Principal Office on the day that is the third (3rd) Business Day (as defined below) prior to the day that on which the meeting is to be held (counting the day on which the notice is given but not

7

the day of the meeting) by: (i) written notice delivered personally, by facsimile, U.S. Mail, overnight delivery service, or electronic mail; or (ii) posting to an electronic network or other form of electronic transmission or website or portal or other method of delivery that may be approved from time to time by the Directors for such purpose. Such notice shall be deemed to be given when deposited in the United States mail or delivered to the overnight delivery service in a sealed envelope addressed to the Director at such Director's address as it appears in the Rules, or as given by the Director to the Conference for purposes of notice, with postage or delivery charge prepaid; when directed to the electronic mail address or number of such Director as it appears in the directory accompanying the Conference Handbook, or as given by the Director to the Conference for purposes of notice; or when posted to an approved electronic network or other form of electronic transmission or website or portal or other approved method of delivery in a manner that can be accessed by all Directors entitled to such Notice. As used herein, the term "Business Day" means any day other than Saturday, Sunday, and any days on which state banks are closed for business in the location of the Principal Office.

1.6.4.2    The attendance of a Director at any meeting shall constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express and sole purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Notice may be waived in writing or by electronic transmission by any Director, whether before or after the meeting.

1.6.5    **Place of Meeting**.  Meetings of the Board of Directors shall be held at such place as shall be provided for in the resolution, notice, waiver of notice or call of such meeting, or if not otherwise designated, at the Principal Office of the Conference.

1.6.6    **Conduct of Meeting**.  The Chair of the Board shall preside over and shall have the right and authority to prescribe such rules, regulations and procedures and to do all such acts and things as are necessary or desirable for the proper conduct of the meeting.

1.6.7    **Quorum**.  Except as may be otherwise specifically provided by statute, by the Certificate or by these Bylaws, seventy percent (70%) or more of the Disinterested Directors with respect to the matters to be considered at any meeting shall constitute a quorum for the transaction of business; provided, however, that if less than seventy percent (70%) or more of such Disinterested Directors are present at said meeting, a majority of such Disinterested Directors present may adjourn the meeting from time to time without further notice. The Directors present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the withdrawal of enough Directors to leave less than a quorum. The vote of a Director on any matter shall not be divulged by the Conference or by any other Director in press announcements, unless such Director expressly consents in advance to such disclosure; provided, however, that nothing herein shall prevent the Conference or the Directors from divulging the total number of votes for or against or abstaining from a vote. Once

8



a quorum is present at a meeting, business may continue to be conducted at the discretion of the Chair of the Board even if Directors subsequently leave the meeting.

1.6.8    **Actions of the Board of Directors Without a Meeting**.  Any action that is required to be or may be taken at a meeting of the Directors may be taken without a meeting if the number of Disinterested Directors necessary to take that action at a meeting consents in writing, setting forth or indicating by reference to a separate communication the action(s) to be taken, are signed by all of the Disinterested Directors with respect to the issue subject to such action. Such consents shall have the same force and effect as a vote of the Directors at a meeting duly held, and may be stated as such in any certificate or document filed under the DGCL. Such consents shall be filed with the minutes of the meetings of the Board of Directors.

1.6.9    **Participation**.  Members of the Board of Directors, or of any Committee (as defined below) designated by the Board of Directors, may participate in a meeting of the Board of Directors, or Committee, in person or by means of Remote Access; participation in a meeting in either such manner shall constitute Presence at the meeting for quorum and all other purposes.

1.6.10    **Committees**.  The Board of Directors may authorize and designate, from time to time or on a regular basis, two or more Directors to constitute a committee of the Board of Directors (each, a "Committee"), and any such  Committee, subject to the provisions of Section 1.5.2, to the extent permitted by law and to the extent provided in the resolution of the Board of Directors establishing the Committee or its charter, shall have and may exercise all of the powers and authority of the Board of Directors in the management of the business and affairs of the Conference.  At all times the Conference shall have Committees designated as the Executive Committee and the Audit Committee, unless a majority of the Disinterested Directors Entitled to Vote affirmatively elects not to establish one or more of such Committees.  In addition, a majority of the Disinterested Directors Entitled to Vote may authorize and establish, from time to time or on a regular basis, such other standing or special committees as it may deem advisable to act as an advisory committee to the Board of Directors. The members, terms and authority of such committees shall be established by the Board of Directors and may be set forth in the Rules (which terms applicable to such committees are incorporated by reference into these Bylaws and made a part hereof in all respects) or in the resolutions of the Board of Directors establishing such committees.

1.6.11    **Executive Committee**.  The Executive Committee shall be comprised of the Chair of the Board, the Secretary/Treasurer and any Vice-Chair of the Board (as defined below) appointed as Officers of the Conference and two at-large members from the Board of Directors. The Board of Directors may also appoint a Director as the Conference's representative to the NCAA Division I Board of Directors, in which event such Director shall also be a member of the Executive Committee. The Executive Committee shall have full power and authority to act on behalf of the Board of Directors: (i) when expressly authorized in advance to do so by the Board; or (ii) in exigent circumstances that do not reasonably allow for action by the full

9

Board of Directors by written consent or a meeting. Provided, however, the Executive Committee shall not have the power in and of itself to take any of the actions expressly set forth in Section 1.5.2. The Executive Committee shall report at each Annual Meeting, Regular Meeting or Special Meeting such matters considered or actions taken by it since the last meeting of the Board of Directors.

1.6.12    **Finance, Budget, and Audit Committee**. The Finance, Budget, and Audit Committee shall be comprised of the Secretary/Treasurer and two (2) other Directors. The Committee shall review the financial statements of the Conference, shall perform such other duties and be vested with such authority as set forth in the charter of the Audit Committee adopted in accordance with Section 1.6.10, and shall have and may exercise all of the powers and authority as the Board of Directors may otherwise establish from time to time by resolution.

1.6.13    **Written Signatures, Consents, or Agreements**. When any provision of these Bylaws or the DGCL require that a document or other writing be "signed," "consented to in writing" "executed," or "taken or agreed to in writing" or other words of similar effect (including but not limited to any written consents in accordance with Section 1.6.8 above), then that requirement may be satisfied by: (i) a physical signature on any document that evidences the required intent relevant to the issue in question, regardless of form, delivered in physical form, facsimile, PDF or other electronic form of delivery, or other form of delivery; (ii) by any electronic communication that evidences the intent of the sender to consent or agree to the matter in question; or (iii) any other manner that complies with Delaware laws relating to electronic communications, electronic signatures, or other applicable laws.

## SECTION I.7- OFFICERS

1.7.1    **Number**.    The corporate officers of the Conference (the "Officers") shall consist of a Chair of the Board, a Commissioner, and a Secretary/Treasurer (all as defined below). The Board of Directors may also elect as Officers one or more Vice-Chairs, one or more Assistant Secretaries, one or more Assistant Treasurers, and one or more Subordinate Officers (all as defined below). Any two or more offices may be held by the same person. All Officers of the Conference, as between themselves and the Conference, shall have such authority and perform such duties in the management of the property and affairs of the Conference as may be provided in these Bylaws or as are established by resolution of the Board of Directors.

1.7.2    **Appointment and Term of Office**.    The Officers of the Conference shall be appointed by the Board of Directors at the Annual Meeting, based on the agreed upon rotation. Each Officer shall hold office until his or her successor shall have been duly appointed or until his or her death or until he or she shall resign or shall have been removed in the manner hereinafter provided. The Chair of the Board and the Vice-Chair of the Board shall serve for two-year terms. The Vice-Chair of the Board will assume the position of the Chair of the Board after serving as Vice-Chair. The Secretary/Treasurer and the two (2) at-large officers will serve one-year terms. Without the express consent of the Board of Directors, no Member is eligible

10

to have its representative serve as Chair of the Board more than two (2) years within any six (6) year period.

1.7.3    **Vacancies**.  If any office becomes vacant by reason of death, resignation, removal, disqualification or any other reason, or if any Officer of the Conference, in the judgment of the Board of Directors, is unable to perform the duties of his or her office for any reason, the Board of Directors may choose a successor to fill such vacancy or may delegate the duties of any such vacant office to any other Officer or to any Director of the Conference for the unexpired portion of the term.

1.7.4    **Removal; Resignation**.  Any Officer or agent, including Subordinate Officers, elected or appointed by the Board of Directors may be removed by the Board of Directors, whenever in its judgment the best interests of the Conference would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Any Officer may resign at any time upon written notice to the Conference or Board of Directors.

1.7.5    **The Chair of the Board and Vice-Chair of the Board**.  The Chair of the Board of Directors ("Chair of the Board") shall be a Director, and he or she shall preside at meetings of the Board of Directors in accordance with Section 1.6.6 above, the Executive Committee and the Executive Meetings (as set forth in Section 5.3.6 of the Rules, which section is incorporated herein and made a part hereof in all respects) and, subject to the direction and control of the Board of Directors, he or she shall direct the policy and management of the Conference. He or she shall perform such other duties as may be prescribed by the Board of Directors from time to time. In the absence of the Chair of the Board, the Vice-Chair of the Board of Directors ("Vice-Chair of the Board") shall exercise all of the powers of the Chair of the Board. In the absence of the Vice-Chair of the Board, the Secretary/Treasurer shall exercise all of the powers of the Chair of the Board.

1.7.6    **The Commissioner**.  The Commissioner shall be the chief executive officer of the Conference, subject to the direction and under the supervision of the Board of Directors.  The Commissioner shall have general charge of the business affairs and property of the Conference and control over its agents and employees, and shall do and perform such other duties and may exercise such other powers as from time to time may be assigned to him or her by these Bylaws or by the Board of Directors. The Commissioner shall be responsible for the general supervision of the operations of the Conference and shall employ such support personnel as necessary and that are consistent with the Rules. The Commissioner shall serve as the principal enforcement officer of the Rules and may conduct, or designate others to conduct, investigations of Members as provided in Section 7.2 of the Rules. The Commissioner shall have the responsibility for and is authorized to provide rulings and interpretations of the Rules.  The Commissioner shall have the powers ordinarily given to the office of President in a for-profit corporation.

1.7.7    **Deputy Commissioner or C-Level Executive**.  At the request of the Commissioner or in the event of his or her absence, disability or refusal to act, the Deputy Commissioner shall perform all the duties of the Commissioner and when so acting shall have all the powers of and be subject to all the restrictions upon the

11



Commissioner. In the event of the Deputy Commissioner's absence, disability or refusal to act, a C-Level Executive(s), Vice President(s), or Associate Vice President(s) (or in the event there is more than one C-Level Executive, Vice President, or Associate Vice President, the C-Level Executive, Vice President, or Associate Vice President in the order of their seniority or designation) shall perform all the duties of the Commissioner and when so acting shall have all the powers of and be subject to all the restrictions upon the Commissioner. The Deputy Commissioner, C-Level Executive(s), Vice President(s), or Associate Vice President(s) need not be a member of the Board of Directors. Each of the Deputy Commissioner(s), C-Level Executive(s), Vice President(s), or Associate Vice President(s) shall have such powers and discharge such duties as may be assigned to him or her by the Commissioner or the Board of Directors, but shall not otherwise be a corporate Officer unless expressly designated as a Subordinate Officer by the Board of Directors.

1.7.8    **The Secretary/Treasurer**.  The Secretary/Treasurer shall be a Director and shall: keep the minutes of the Board of Directors; see that all notices are duly given in accordance with the provisions of these Bylaws; have ultimate responsibility for supervision of the funds, securities, receipts and disbursements of the Conference; cause all monies and other valuable effects of the Conference to be deposited in its name and to its credit in such depositories as shall be selected by the Board of Directors or pursuant to authority conferred by the Board of Directors; cause to be kept correct books of account, proper vouchers and other papers pertaining to the Conference's business at the accounting office of the Conference; render to the Board of Directors annually an audited account of the financial condition of the Conference; and perform any other duties as from time to time may be assigned by the Board of Directors. These functions may be performed by other Officers or employees of the Conference under the direction of the Secretary/Treasurer. The Secretary/Treasurer shall serve as a member of the Executive Committee as provided in Section 1.6.11 and of the Audit Committee as provided in Section 1.6.12.

1.7.9    **The Assistant Secretary and Assistant Treasurer**.  The Assistant Secretary and Assistant Treasurer (or in the event there be more than one Assistant Secretary or Assistant Treasurer, in the order of their seniority, designation or election) need not be members of the Board of Directors and shall, upon request or in the absence or disability of the Secretary/Treasurer, perform the duties and exercise the powers of the Secretary/Treasurer, and shall be corporate Officers with the power to bind the Conference and perform such other duties as the Chair of the Board, the Commissioner, or the Board of Directors may designate. At all times, the Commissioner shall serve as an Assistant Secretary and Assistant Treasurer of the Conference.

1.7.10    **Subordinate Officers**.  The Board of Directors may appoint, from time to time, such other corporate Officers as the business of the Conference may require (each a "Subordinate Officer"), each of whom shall be corporate Officers with the power to bind the Conference and have authority and perform such other duties as the Chair of the Board, the Commissioner, or the Board of Directors may designate, and shall hold office until he or she resigns, is removed or is disqualified.

12

1.7.11    <u>Compensation</u>.  The salaries or other compensation of the Officers shall be fixed from time to time by the Board of Directors; provided, however, that those Directors who are Officers shall not be entitled to receive compensation. The power to establish salaries of Officers, other than the Commissioner, may be delegated by the Board of Directors to the Chair of the Board, the Commissioner, or a Committee.

## SECTION I.8- CONTRACTS. LOANS. CHECKS AND DEPOSITS

1.8.1    <u>Contracts, Deeds and Other Instruments</u>.  Except as otherwise provided in these Bylaws, the Board of Directors may authorize any Officer or Officers, agent or agents to enter into any contract or execute and deliver any deed or other instrument in the name of and on behalf of the Conference, and such authority may be general or confined to specific instances.

1.8.2    <u>Loans</u>.  No loans shall be contracted on behalf of the Conference and no evidences of indebtedness shall be issued in its name unless authorized by the Board of Directors. Such authority may be general or confined to specific instances.

1.8.3    <u>Checks, Drafts and Other Documents</u>.  All checks, drafts and other orders for payment of money, notes or other evidences of indebtedness issued in the name of the Conference, shall be signed by such Officer or Officers, agent or agents of the Conference and in such manner as shall from time to time be determined by the Board of Directors. Endorsement of instruments for deposit to the credit of the Conference in any of its duly authorized depositories may be made by rubber stamp of the Conference or in such other manner as the Board of Directors may from time to time determine.

1.8.4    <u>Deposits</u>.  All funds of the Conference not otherwise employed shall be deposited from time to time to the credit of the Conference in such banks, trust companies or other depositories as the Board of Directors may select.

## SECTION I.9- FISCAL YEAR

1.9    <u>Fiscal Year</u>.  Except as from time to time otherwise provided by the Board of Directors, the fiscal year of the Conference shall extend from the first day of July to the last day of June of each year, both dates inclusive.

## SECTION I.IO- AMENDMENTS

1.10    <u>Amendments</u>. These Bylaws may be altered, amended or repealed and new Bylaws may be approved by the Board of Directors at any Annual Meeting, Regular Meeting or Special Meeting called for that purpose only by the affirmative vote of seventy-five percent (75%) or more the Disinterested Directors Entitled to Vote on such issue, except for the provisions of Section 1.5.2 above and bylaws relating to matters for which a greater affirmative vote is required pursuant to Section 1.5.2, which may be amended only by the affirmative vote of the number of Directors that would be required to take the action provided for in such bylaw.



**SECTION 1.11- INCENTIVE PLANS**

1.11      <u>Incentive Plans</u>.  In furtherance, and not in limitation, of the powers conferred by the laws of the State of Delaware, the Board of Directors, in its sole discretion, is authorized and empowered to establish bonus, pension, or other types of incentive or compensation plans for the employees, including Officers of the Conference, and to determine the persons to participate in any such plans and the amount of their respective participations; provided, however, that Directors and Directors who are Officers shall not be eligible for any incentive program or plan established pursuant to this Section 1.11.

**SECTION 1.12- INDEMNITY POLICY**

1.12      <u>Indemnity Policy</u>. The Conference shall indemnify the Directors, the Faculty Athletics Representatives, the Athletics Directors, Senior Woman Administrators, Officers and the Conference staff, or any of them, and may indemnify others as permitted by the DGCL as authorized by the Board of Directors (each, a "Covered Person"), against any costs (including attorneys' fees), expenses, judgments, fines, and other amounts reasonably incurred by such Covered Persons, or any of them in connection with any claim demand, suit, or proceeding, civil or criminal, arising out of and related to acts performed while such Covered Persons are serving in official capacities on behalf of the Conference (including but not limited to persons serving as officers or committee members) to the fullest extent permitted under the DGCL. In addition, the Conference may enter into such agreements to indemnify any or all Covered Persons, or purchase and maintain insurance coverage by or on their behalf, as approved by the Board of Directors.

**SECTION 1.13- MISCELLANEOUS PROVISIONS**

1.13.1    <u>Books and Records</u>.  The Conference shall keep correct and complete books and records of its accounts and transactions and minutes of the proceedings of its Members and Board of Directors and of the Executive Committee or other Committees when exercising any of the powers of the Board of Directors. The books and records of the Conference may be in written form or in any other form which can be converted within a reasonable time into written form for visual inspection. Minutes shall be recorded in written form but may be maintained in the form of a reproduction.

1.13.2    <u>Inspection of Bylaws</u>.  The Conference shall keep in its Principal Office the original or a copy of these Bylaws as amended or otherwise altered to date, certified by the Secretary/Treasurer, which shall be open to inspection by any Director or Member at all reasonable times during ordinary business hours.

1.13.3    <u>Notice</u>.  Any notice or other document which is required by these Bylaws to be given shall be given by: (i) written notice delivered personally, by facsimile, U.S. Mail, overnight delivery service, or electronic mail; or (ii) posting to an electronic network or other form of electronic transmission or website or portal or other method of delivery that may be approved from time to time by the Directors for such purpose.

14



**1.13.4    Execution of Documents**.  An Officer who holds more than one office in the Conference may not act in more than one capacity to execute, acknowledge, or verify an instrument required by law to be executed, acknowledged, or verified by more than one Officer.

**1.13.5    Annual Report**.  An annual report shall be required, and shall be provided orally or in writing to the Board of Directors at the Annual Meeting or upon the completion of each fiscal year, stating the operations, prospects and finances of the Conference for such fiscal year and containing such other items as may be reasonably requested by the Board of Directors.

15

## SECTION 2- BUDGET AND DISTRIBUTION POLICY

2.1        __Budget Approval__.  The Board of Directors shall annually approve the Conference operating budget for the next immediate fiscal year during its Spring business meeting, including the amount of revenue to be distributed. Distribution of revenue in excess of the annual budgeted distributable net revenue from additional sources (e.g., second BCS bowl appearance) shall be determined by the Board of Directors during the annual spring meeting.

2.2        __Member Assessments__.  The Conference shall fund its operations from revenues received from third party sources. The Board of Directors may from time to time vote to assess the Members to meet the operating and capital expenses of the Conference and enable the Conference to operate as provided in these Bylaws, the Rules and the Certificate.

2.3        __Revenue Distribution__.  Subject to adjustment as provided in Section 2.4 below and Section 7.5 of the Rules, the revenues received by the Conference shall first be used to pay the operating and other expenses incurred or fund reserves established by the Board of Directors of the Conference, and thereafter the remainder (the "Net Distributable Revenues") shall be distributed as follows:

2.3.1        __Payment of Member Subsidies and Member-Designated Revenues__. Member participation subsidies payable by the Conference to a Member in connection with such Member's participation in post-season competition in accordance with rules established from time to time by the Board of Directors of the Conference, and revenue received by the Conference from the NCAA that is designated by the NCAA to be paid directly to a given Member for items such as NCAA grants-in-aid, academic enhancement payments, and student-athlete welfare payments, shall be paid to such Member and shall not be distributed pursuant to Section 2.3.2 below.

2.3.2        __Equal Distribution of All Other Net Distributable Revenue__.  All Net Distributable Revenues other than those distributed pursuant to Section 2.3.1 above shall be distributed to each Member in equal proportions, except that if a given Member has executed a written agreement with the Conference resulting in such Member receiving a distribution in a given year that is less than the distribution of revenues that such Member would otherwise have received pursuant to this Section 2, then: (i) the amount of Net Distributable Revenue that is distributed to such Member shall be the lesser agreed-on amount; and (ii) the reduction in the amount distributable to such Member shall be distributable to all other Members (excluding any Member(s) that have similarly executed a written agreement resulting in such Member(s) receiving a distribution in a given year that is less than the distribution of revenues that such Member would otherwise have received pursuant to this Section 2) in equal proportions.

2.4        __Adjustment of Revenue Distribution Upon Telecast of More Than One Football Game on Permitted Member Institution Outlets__.  Members may televise football games (other than the Member Institution Retained Football Game (as defined in

16

the Conference's Amended and Restated Telecast Rights Agreement with FOX Cable Networks, Inc. and FOX Broadcasting Company (collectively, "FOX") and the Conference's Amended and Restated Agreement with American Broadcasting Companies, Inc., ESPN, Inc., and ESPN Enterprises, Inc. (collectively, "ESPN/ABC"), each dated effective as of July 1, 2012 (collectively, the "Media Rights Agreements")) (a "MIRFG")) on their Permitted Member Institution Outlets (as defined in the Media Rights Agreements) (a "PMIO") only when two institutions agree and the requisite consent or sublicense from FOX or ESPN/ABC, as applicable, is obtained. Members may agree to purchase or sublicense one or more football games beyond the MIRFG from FOX or ESPN/ABC to air on a PMIO, provided that both Members involved in such game and FOX or ESPN/ABC, as applicable, agree to such purchase or sublicense in accordance with the terms of the Media Rights Agreements (an "Additional Game"). If such purchase or sublicense occurs, then the pro rata share of the Conference distribution due to the Member or Members on whose PMIO such Additional Game is telecast shall be reduced by $200,000 per Additional Game for each such Member on whose PMIO the Additional Game is telecast (or $400,000 if both Members telecast the Additional Game in addition to their MIRFG on their PMIO) (the "Reduction Amount"), and the Reduction Amount shall be reallocated in equal proportions to the other Members who do not participate in such game. The Reduction Amount shall be reduced if the normal rights fee from the television platform on which the Additional Game is telecast is less than $200,000, in which event the Reduction Amount shall be the amount of the actual rights fee for such Additional Game.

2.5     **Conference Assets and Reserves**.  The Board of Directors may establish such reserves as it may determine appropriate from time to time and may fund such reserves from Conference revenues and assets and establish the form of such reserves (which may be in the form of reserve accounts or other assets) in the manner the Board of Directors determines to be appropriate. No Member shall have any right in any revenues, assets, or reserves of the Conference until such revenues, assets, or reserves are approved for distribution by the Board of Directors pursuant to the foregoing provisions of this Section 2.

## SECTION 3- WITHDRAWAL AND SANCTIONS

3.1      <u>Withdrawal</u>.    Notwithstanding the commitment of each Member set forth in Section 1.2.3 above, a Member may only withdraw from the Conference, cease to be a member in the Conference, or otherwise fail to fully participate in the activities of the Conference in contravention of its commitment to remain a Member in the Conference for such membership term as defined in Section 1.2.3 above ("Withdraws" or "Withdrawal") by fully complying with the provisions of these Bylaws and by paying the Buyout Amount (as defined below). Each Member acknowledges and agrees that the Withdrawal of a Member and the payment of the Buyout Amount and implementation of the provisions of these Bylaws does not abrogate the obligations of such Withdrawing Member (as defined below) pursuant to that certain Amended and Restated Grant of Rights Agreement dated effective as of July 1, 2012, or any replacement or extension thereof or other agreement pursuant to which such Member grants the right to telecast some or all of its sporting events to the Conference (a "Grant of Rights Agreement"). The Grant of Rights Agreement which will remain in full force and effect as to such Withdrawing Member and the Withdrawing Member shall continue to be fully bound under the Grant of Rights Agreement after Withdrawal for the remainder of the term of any Grant of Rights Agreement as if it remained a Member of the Conference, but the Withdrawing Member shall not be entitled to payment of any amounts or any other benefits arising under the Grant of Rights Agreement after Withdrawal.

3.2      <u>Withdrawing Member</u>.  A Member (a "Withdrawing Member") may Withdraw, or shall be deemed to have Withdrawn, as a Member of the Conference: (i) if it gives notice of the intent to Withdraw to the Conference; or (ii) if a Supermajority of Disinterested Directors by affirmative vote determines that such Member: (A) makes statements or takes actions that are determined by a Supermajority of Disinterested Directors to evidence the intent of such Member to withdraw from the Conference either currently or in the future; (B) breaches or evidences its intent to breach or not honor and fully comply with its obligations to the Conference under these Bylaws or the Grant of Rights Agreement for the entirety of the respective terms thereof; (C) if a third party offers to, or attempts to induce a Member to, leave the Conference and/or breach or not to fully perform its future obligations under the Grant of Rights Agreement and the Member does not both (1) inform the Conference of such action as promptly as possible (but in any event not later than twelve (12) hours after such action) and (2) immediately and unconditionally reject that offer in a form and manner reasonably acceptable to the Commissioner; or (D) if a Member otherwise takes or fails to take actions that are determined by a Supermajority of Disinterested Directors to be contrary to the best interests of the Conference taken as a whole.

3.3      <u>Notice Date and Interim Period</u>.  The "Notice Date" of the Withdrawal shall be the date of the occurrence of the event that causes the Withdrawal under Section 3.2 above. The "Effective Date" of the Withdrawal shall be the June 30 that next follows the end of the period that is 18 full calendar months following the Notice Date, unless an earlier date is established by a Supermajority of Disinterested

18



Directors in its sole discretion.  The period from the Notice Date to the Effective Date is referred to herein as the "Interim Period."

3.4     **Buyout Amount**.   Any Withdrawing Member shall pay to the Conference a commitment buyout fee (the "Buyout Amount") in an amount equal to the sum of the amount of distributions that otherwise would be paid to the Member during the final two years of its membership in the Conference. The Withdrawing Member shall be deemed to have agreed to forfeit all distributions of any type that otherwise would have been made to the Withdrawing Member during the Interim Period (the "Distribution Withholding") and the Conference shall not pay the Distribution Withholding to the Withdrawing Member. A Withdrawing Member agrees to pay to the Conference the amount by which the Buyout Amount exceeds the Distribution Withholding, with such payment to be made not later than the Effective Date. In addition,

- <u>if</u> (A) by legal action or otherwise, a Withdrawing Member, or any other person or entity, attempts to challenge or oppose or interfere with, or challenges or opposes or interferes with, (i) the payment of the Buyout Amount by the Withdrawing Member or the withholding of the Distribution Withholding by the Conference, (ii) the enforcement by the Conference of its rights under the Grant of Rights Agreement or the performance by the Withdrawing Member of its obligations under the Grant of Rights Agreement, or (iii) the right of the Conference's telecast partners to televise games of the Withdrawing Member under the terms of the Grant of Rights Agreement during its then-remaining term; or (B) for any other reason the Conference's telecast partners are unable to produce and telecast games of the Withdrawing Member during the then-remaining term of the Grant of Rights Agreement or the Conference is unable to realize the revenues relating to those games from its telecast partners,

- <u>then</u> the Members agree that such actions, in breach of the Withdrawing Member's agreements in these Bylaws, cause additional damage to the Conference and therefore that the Buyout Amount shall be increased by, and shall also include, and the Withdrawing Member shall be obligated to pay to the Conference immediately upon the occurrence of any of the foregoing events, the amount of all actual loss, damage, costs, or expenses whatsoever (including but not limited to lost revenues, damage to reputation and public image, and damage to relationships with related parties) incurred by the Conference or any of its remaining Members directly or indirectly related to that challenge or opposition, whether economic or otherwise.

Each of the Members agrees that Withdrawal of a Member contrary to its commitment to the Conference and the other Members pursuant to Section 3.1 above would cause damage and financial hardship to the Conference and the other Members without regard to the continued enforcement of the Grant of Rights Agreement, that the financial consequences to the Conference and its remaining Members cannot be measured or estimated with certainty at this time, and that the payment of the Buyout Amount is a reasonable method of compensating the Conference and the other Members for such damage and financial hardship and shall not be construed as a penalty.

19



3.5    **Effect of Withdrawal**.    The term of office of any Director representing a Withdrawing Member shall automatically expire and such Director shall no longer be a Director of the Conference effective as of the Notice Date and such Withdrawing Member shall not be entitled to have a Director representative on the Board of Directors during the Interim Period or thereafter. During the Interim Period and thereafter: (i) the number of Directors shall automatically be reduced by the number of Withdrawing Members and the calculation of the Disinterested Directors Entitled to Vote, the Majority of Disinterested Directors, and the Supermajority of Disinterested Directors shall exclude for all purposes the position on the Board of Directors previously represented by the Withdrawing Member(s); and (ii) neither the Director representing any Withdrawing Member nor such Member's representatives on any Advisory Committee (as defined in the Rules) shall be entitled to attend any meeting of, vote on any matter before, notice of any meeting of, or copies of materials distributed to, the Board of Directors or any Advisory Committee.

3.6    **Sanction of a Member**.    The Conference may sanction ("Sanction" and "Sanctioned" and variations thereof) a Member by the affirmative vote of a Supermajority of Disinterested Directors at any meeting of the Directors at which the Director representative(s) of the Member(s) that are the subject of such vote has been given reasonable prior notice and the reasonable opportunity to be present and to be heard. A Supermajority of Disinterested Directors may take such action if, after the Member's opportunity to be heard, a Supermajority of Disinterested Directors determines that such Member has: (i) violated any provision of these Bylaws or the Rules and other regulations established from time to time by the Board of Directors that govern the Conference or the Grant of Rights Agreement; (ii) engaged in any action or a course of conduct materially adverse to the best interests of the Conference taken as a whole; (iii) taken or omitted to take any other action that could be the basis for Withdrawal as described above if a Supermajority of Disinterested Directors does not elect to deem the action to constitute a deemed Withdrawal at that time; or (iv) otherwise taken any action or omitted to take an action that a Supermajority of Disinterested Directors determines merits Sanctions. In accordance with the preceding sentence, a Supermajority of Disinterested Directors shall, in its sole discretion, be empowered to determine whether any Sanctions are appropriate, the type, extent, and conditions to any Sanctions imposed, and impose such Sanctions on a Member depending, in each case, on factors that a Supermajority of Disinterested Directors deems to be relevant, including but not limited to the severity of the harm to the Conference taken as a whole resulting from the action or inaction set forth in the preceding sentence. Without limiting the foregoing and merely as an illustration of the types of Sanctions that could be considered by a Supermajority of Disinterested Directors are prohibitions on appearance in postseason events or televised events, restrictions on revenue distributions, and limitations on recruiting or scholarships.



## SECTION 4- PERMITTED MEMBER INSTITUTION OUTLETS

4.1     <u>Permitted Member Institution Outlets.</u>  Each Member shall not, and shall cause its PMIO not to, produce, telecast, show, or otherwise distribute on its PMIO (while such PMIO is acting in the capacity as such Member's PMIO) any high school games or highlights of high school games. Pursuant to NCAA interpretations, it is permissible to use scores, standings, and statistics of high school games on a PMIO.

21

# RULES

# RULES

## SECTION 5- ORGANIZATION

5.1        <u>Organization</u>.  Each Member Institution shall be represented in the Conference by a Chief Executive Officer (who shall be the President or Chancellor of each Member Institution and who shall serve as such Member Institution's representative on the Board of Directors), a Faculty Athletics Representative ("FAR"), an Athletics Director ("AD"), and a Senior Woman Administrator ("SWA"). The Conference shall be governed and administered by the Board of Directors ("the Board"), and the following Advisory Committees, as authorized in the Bylaws of the Conference: FARs, ADs and SWAs. The FARs, ADs and SWAs may be referred to herein collectively as "Advisory Committees" and each individually as an "Advisory Committee." In addition, as authorized in the Bylaws, the Conference shall have such Standing Committees as are specified in Rule 5.4 herein.

   5.1.1    <u>Board of Directors</u>. The Chief Executive Officer of each Member Institution (President or Chancellor) who is ultimately responsible for intercollegiate athletics shall serve on the Board of Directors.  As the governing board of the Conference, the Board has authority over all functions and activities of the Conference not otherwise specifically limited by a Conference Rule.  The powers and responsibilities of the Board of Directors are set forth in the Bylaws.

   5.1.2    <u>Faculty Athletics Representatives</u>. The FARs shall consist of a representative of each Member Institution appointed by the Chief Executive Officer of such Member Institution who shall be a member of the institution's faculty or an administrator who holds faculty rank and shall not hold an administrative or coaching position in the athletics department. It is the responsibility of the FARs to act on recommendations from the ADs and SWAs, to recommend rule and policy changes or adaptations, act on all Conference-sponsored legislative proposals, recommend a Conference budget, review recommendations from the Conference office, refer items to the attention of the ADs and SWAs, act on recommendations from Standing Committees which are referred to it, and evaluate the impact of Conference practices pertaining to student-athlete experience and academic matters. The FARs are also responsible for:

   (a)    Acting on all eligibility matters, including Conference Rule 7.6 Waivers;

   (b)    Overseeing the NCAA Student Assistance Fund, including any policies on such;

   (c)    Providing initial review and recommendations pertaining to policies and procedures relative to all academic matters;

   (d)    Approving the Dr. Prentice Gautt Postgraduate Scholarship recipients,



including policies governing the administration of the scholarship and selection of recipients; and

(e)    Liaising with all standing and ad hoc committees pertaining to holistic student-athlete wellbeing and experience.

All FAR actions are effective following FAR approval. The FAR actions will be placed on the agenda for an Annual, Regular or Special Meeting of the Board of Directors for their review at which time the Board has the opportunity to review and alter any action of the FARs.

5.1.3    **Athletics Directors**.  The ADs shall consist of representatives of each Member Institution appointed by the Chief Executive Officer of such institution who shall be an AD at that Member Institution (each an "Athletics Director"). The AD shall be a full-time employee of the Member Institution. The ADs are:

(a)    Responsible for carrying out Conference operations and implementing policies and procedures related to competition, including scheduling, television and bowl negotiations, championship and tournament site selection and procedures, and officiating; and

(b)    Responsible for oversight of all authorized enterprises and activities of the Conference.

Actions of the ADs shall be forwarded to the FARs for further action. If approved by the FARs, the effectiveness of any action shall be determined in accordance with Rule 5.1.2.

5.1.4    **Senior Woman Administrators**. The SWAs shall consist of the highest ranking female intercollegiate athletics administrator (or the next highest ranking female athletics administrator should the AD be female) of each Member Institution as appointed by the institution. The SWA shall be a full-time female employee of the Member Institution. Actions of the SWAs shall be forwarded to the ADs. The SWAs shall:

(a)    Be responsible for providing initial review of sport committee recommendations, policies and procedures related to all competition other than football and men's basketball; and

(b)    Be responsible for providing initial review and recommendations pertaining to policies and procedures relative to championships and awards programs for all sports;

(c)    Assist in the operation of the Conference by providing advice and advocacy involving any Conference issue and more specifically by providing leadership through proposing Conference actions and policies for the enhancement of gender equity, diversity and inclusion.

23



5.1.5    <u>Noncontroversial Recommendations</u>. The chair of an Advisory Committee or standing committee whose charge is to take initial action on committee recommendations may use its discretion to designate a recommendation as noncontroversial, provided the recommendation has no budget impact, no adverse academic impact and does not significantly alter current policies and procedures. Such recommendations will be forwarded to all Advisory Committees. Upon receipt of the noncontroversial recommendations and for "check and balance" purposes, the Advisory Committees will have seven (7) business days to request further review of any sport recommendation based on any concern that the matter could be considered controversial in nature. At the conclusion of the seven (7) business days, recommendations that do not receive a request for further review shall be considered affirmed. For purposes of this policy, a business day is any weekday that is not recognized as a national holiday, including any weekday which an institution is closed for other reasons (e.g., holiday break).

5.2    <u>Chair and Vice Chair of Each Advisory Committee</u>.  Beginning July 1 of each year, the FAR, AD and SWA from each Member Institution shall serve as Chair of their respective advisory committee for one (1) year in the following order. In the absence of the Chair, the Vice-Chair may exercise all of the powers of the Chair. The Vice-Chair shall be designated from the Member Institution that will serve as Chair for the ensuing year.

| | |
|---|---|
| 2025-2026 | West Virginia University |
| 2026-2027 | Texas Christian University |
| 2027-2028 | Texas Tech University |
| 2028-2029 | Baylor University |
| 2029-2030 | Iowa State University |
| 2030-2031 | Brigham Young University |
| 2031-2032 | University of Central Florida |
| 2032-2033 | University of Cincinnati |
| 2033-2034 | University of Houston |
| 2034-2035 | Kansas State University |
| 2035-2036 | Oklahoma State University |
| 2036-2037 | University of Arizona |
| 2037-2038 | Arizona State University |
| 2038-2039 | University of Colorado |
| 2039-2040 | University of Utah |
| 2040-2041 | University of Kansas |

5.3    <u>Procedures for Meetings of Advisory Committees</u>.

5.3.1    <u>Agenda Items</u>.  In advance of each regularly scheduled Advisory Committee meeting, proposed agenda items shall be solicited from the committee's membership by the Conference staff.  In consultation with the Commissioner and the chair of each Advisory Committee, Conference staff shall have the responsibility of preparing and distributing the agenda at least seven (7) days before the meeting. The chair of each Advisory Committee and the Commissioner may place additional items on the agenda to be distributed. With the consent of at least nine (9) of the members of an Advisory Committee, items requiring action may be added to the agenda established for a meeting of the FARs, ADs or SWAs, as the case may be. A discussion item may be added to the agenda of an Advisory Committee meeting at the discretion of the Chair. A discussion item added by the Chair may become an action item with the consent of at least nine (9) members of the committee.

5.3.2    <u>Substitutions</u>.  Substitute representatives shall be permitted for FARs, ADs or SWAs at regularly scheduled meetings of each such Advisory Committee subject to the following process. The Commissioner, in consultation with the chair of the respective Advisory Committee, and in the Commissioner's sole discretion (subject to a contrary determination by a majority vote of the Advisory Committee) may consider authorizing a Member Institution to appoint a substitute to participate in the meeting representing such Member. All such substitutes shall count for purposes of establishing a quorum, determining votes, and for all other purposes at such meeting.

5.3.3    <u>Annual Meetings</u>.  At least one (1) Annual Meeting of each of the Advisory Committees shall be held. At the Annual Meeting, each Advisory Committee shall recognize the next Chair who shall serve a one-year term according to the rotation plan established by Rule 5.2.

5.3.4    <u>Regular Meetings</u>.  Regular meetings of each of the Advisory Committees shall be held at such times as each such committee may determine; provided, however, in addition to the Annual Meeting of each of the Advisory Committees, there shall be at least three (3) regular meetings of each such Advisory Committee each year.

5.3.5    <u>Special Meetings</u>.  Special meetings of each of the Advisory Committees may be called by or at the request of a majority of the Board of Directors, the Executive Committee of the Board of Directors, the Chair of each such Advisory Committee, or nine (9) of the members of such Advisory Committee upon written or printed notice served personally to each member of the Advisory Committee by mail or electronic mail to his or her address.

5.3.6    <u>Joint Council Meetings</u>.  Joint Council meetings consist of the FARs, ADs, and SWAs, and shall be held upon the call of the Chair of the FARs. Each Member Institution will have one (1) vote at such meeting, which vote will be placed by the FAR. The agenda for such meetings shall be prepared by the Conference staff in consultation with the Chair of the FARs and can include any item



relative to Conference operation, rules, or policies. Joint Meetings may be held at the time of each annual or regular meeting of the FARs, ADs and SWAs. Normally, at least two (2) Joint meetings shall be held each year.

5.3.7 **Board of Directors-Joint Council Meetings**.  Board of Directors-Joint Council meetings shall be held upon the call of the Executive Committee of the Board of Directors. The Chair of the Board of Directors or his or her designee presides at such meetings. The agenda for such meetings can include any item relative to Conference operation, rules, or policies. At least one (1) Board of Directors-Joint Council meeting shall be held each year.

5.3.8 **Enactment of Conference Rules**.  New Conference Rules shall not be applied retroactively, except a currently enrolled student-athlete shall receive the benefit of any new Rule that works to the student-athlete's advantage.

5.3.9 **Notice**.  Notice of any meeting of an Advisory Committee shall be given at least seven (7) days previously thereto by written notice delivered personally, by mail, overnight mail, or electronic mail to each member at his or her business address or electronic mail address. If mailed or overnight mailed, such notice shall be deemed to be delivered when deposited in the United States mail, with postage thereon prepaid. If notice is given by electronic mail or facsimile, such notice shall be deemed to be delivered upon receipt. Except as otherwise provided in Rule 5.3.1 herein, the business to be transacted at and the purpose of any meeting of each Advisory Committee must be specified in the notice or waiver of notice of such meeting.

5.3.10 **Place of Meeting**.  Meetings of each Advisory Committee shall be held at such place as provided in the resolution, notice, waiver of notice or call of such meeting, or if not otherwise designated, at the Principal Office of the Conference.

5.3.11 **Conduct of Meeting**.  Subject to the last sentence of this paragraph, the Chair of each Advisory Committee shall have the right and authority to prescribe such rules, regulations and procedures and to do all such acts and things as are necessary or desirable for the proper conduct of the meeting. At any time at the beginning of or during a meeting, however, a member may demand on the record of such meeting that Robert's Rules of Order be followed with respect to any subsequent action at such meeting with respect to a specific issue specified in such demand.

5.3.12 **Quorum**. Twelve (12) or more members of each Advisory Committee shall constitute a quorum for the transaction of business, and the affirmative vote of nine (9) or more members of such Advisory Committee shall be required for the approval of any matter before such Advisory Committee.  If fewer than twelve (12) members are present at a meeting, a majority of the members present may adjourn the meeting without further notice.  If a duly-called meeting begins with a quorum and subsequently enough members leave so that the meeting lacks a quorum, the consideration of business may continue

subject to the requirement that matters for consideration still must be approved by nine (9) or more members.  Except as otherwise requested by a member, the vote of individual members of each Advisory Committee on any matter shall not be recorded in the minutes for such meeting.  The individual votes of members of each Advisory Committee shall not be divulged by the Conference or by any other member of such Advisory Committee in press announcements, except as consented to in advance by such member.

5.3.13   **Participation.**   Members of an Advisory Committee may participate in a meeting by means of videoconference, teleconference or similar communication equipment as long as all persons participating in the meeting can hear each person; participation in a meeting in this manner shall constitute presence in a person at the meeting.

5.3.14   **Actions Without a Meeting.**  Any action that is required to be or may be taken at an Advisory Committee meeting may be taken without a meeting if consents in writing, setting forth the action so taken, are executed by all of the members of such Advisory Committee. Such consents shall have the same force and effect as a unanimous vote at a meeting duly held. Such consents shall be filed with the minutes of such Advisory Committee.

5.4      **Standing Committees.**

5.4.1   **Procedures for Meetings.**   Unless otherwise provided, appointments to Standing Committees will be made by the Administrative Committee. Each Standing Committee shall meet on an "as needed" basis. Meetings of the Standing Committees may be called by the Board of Directors, the Executive Committee of the Board of Directors, the Commissioner, or by the Chair or a majority of the members of such Standing Committee. Unless waived in writing by each member, notice of any meeting of a Standing Committee shall be given at least seven (7) days previously thereto by written notice delivered personally, by facsimile, mail, electronic mail, or overnight mail to each member of such Standing Committee at his or her business address or electronic mail address. Meetings of each Standing Committee shall be held at such place as shall be provided for in the notice of such meeting. Members of a Standing Committee may participate in a meeting by means of a videoconference, teleconference or other similar communication equipment as long as all persons participating in the meeting can hear each person. Recommendations shall be forwarded in a manner consistent with Section 12 – Governance Structure.

5.4.2   **Nominating Committee.**  The Nominating Committee shall be responsible for (1) the process for determining membership and chairship of Standing Committees on the basis of interest and experience and; (2) coordinating the Conference's nominating process for NCAA Committees. The membership of the Committee shall be comprised of the current chair of the FARs, the immediate outgoing chair of the ADs, and the incoming chair of the SWAs, each serving one-year terms. The composition will also include three (3) at-large members from the SWAs, three (3) at-large members from the FARs, the

27

current chair of the Directors of Compliance, the current chair of the Directors of Student Support Services and one (1) athletics administrator.  Further, at least eight (8) of the Member Institutions must be represented.

5.4.3    **Finance, Budget, and Audit Committee.** The Finance, Budget, and Audit Committee shall be responsible for advising the Conference on the development of the general Conference budget, including specific budgets for championships, tournaments, and other events, as well as (1) assisting the Board  with oversight of the integrity of the Conference's financial statements and systems of internal controls regarding finance, accounting, and legal compliance; and (2) exercising its direct responsibility for the appointment, compensation, oversight and retention of the Conference's independent auditors in performing audit services for the Conference and assist Board oversight of such auditor's qualifications, independence and performance. This Committee shall be comprised of the immediate past Chair of the Board, the current Vice-Chair of the Board, and the Treasurer of the Board. The Big 12 Chief Financial Officer serving as staff liaison to the Committee and the Treasurer of the Board shall serve as the Chair of the Committee. The Chief Financial Officer of the University from which the Chair represents shall be considered an ex-officio member of the Committee.

5.4.4    **Student-Athlete Standing Committees.** The Conference shall have two separate standing committees made up of student-athletes. These two committees shall be the Student-Athlete Advisory Committee (SAAC) and the Leadership Innovation Future Team (LIFT).

5.4.4.1    **Student-Athlete Advisory Committee**. The Student-Athlete Advisory Committee ("SAAC") shall be responsible for supporting student- athlete policies and issues within the Conference and at the NCAA Division I national level. The SAAC shall also: (a) support campus level programming, (b) student-athlete initiatives and (c) work with the Conference to develop positions on legislative matters pertinent to all student-athletes in the Conference and NCAA. Its membership shall be compromised of two (2) student-athletes appointed from each Member Institution. The committee shall be assigned an FAR, SWA and a liaison from the directors of student-athlete development administrative group. Matters developed by the SAAC may be appropriate to present to an Advisory Group or a standing committee for consideration or action.

5.4.4.2    **Leadership Innovation Future Team.** The Leadership Innovation Future Team ("LIFT") shall be responsible for supporting the Conference governance structure by providing a student-athlete perspective. Its membership shall be comprised of two (2) student- athletes appointed from each Member Institution. LIFT shall be assigned an FAR liaison for each subgroup within the committee. LIFT shall not have voting rights at the Conference level. However, it shall work closely with and

> report directly to the FARs. The FARs will consider all feedback and recommendations from LIFT and may take appropriate actions within the Conference governance structure. LIFT will primarily focus on student-athlete well-being that impact all student-athletes within the Conference. LIFT will also be afforded the opportunity to meet with the Board of Directors or other Advisory Groups at least annually to provide updates on the committee's work.

5.4.5     **Student-Athlete Health and Wellbeing Advisory Group**. The Student-Athlete Health and Wellbeing Advisory Group (SAHWAG) shall serve in an advisory capacity to the Conference to support the delivery of independent medical care to member institutions and determine medical management decisions related to student-athletes, including, but not limited to: athletic training, medical services, mental health, nutrition, sports performance and sport analytics. Its membership shall be comprised of each member institution's designated Athletics Health Care Administrator and one (1) FAR. Recommendations developed by SAHWAG shall be presented to the FARs or ADs, as appropriate.

5.4.6     **Academic Performance Research.** The Board of Directors may form a task force to examine issues relating to the academic performance of student-athletes, which includes the informed consent requirement, as designed by the FARs and approved by the Board of Directors.

5.5     **Conference Meeting Expenses**.

5.5.1     **Expenses of Faculty Athletics Representatives, Athletics Directors and Senior Woman Administrators**. The expenses of FARs, ADs and SWAs (or their respective designees) to attend annual, regular and special meetings shall be paid by each Member Institution.

5.5.2     **Expenses of Coaches and Administrative Staff Members.** The expenses of coaches and administrative staff members to attend annual, regular and special meetings shall be paid by each Member Institution.

5.5.3     **Exception.** When an individual member of an advisory committee, coach or other institutional staff member is representing the Conference at a specified event, the Conference shall pay the actual and necessary expenses of that individual to represent the Conference at that meeting.

5.6     **Coaches' Meetings**. Conference-sanctioned annual meetings of the head coaches of each Member Institution may occur at convenient, cost-effective locations. Each Member Institution shall be allowed one (1) voting delegate per each group's meeting. Recommendations shall be forwarded in a manner consistent with Section 12- Governance Structure.

29

5.6.1     **Head Coaches Mandatory Attendance Requirements**.  Head coaches must attend the Annual Conference Coaches Meeting or Teleconference or Videoconference and Conference Media Day. Exceptions to this attendance requirement can only be granted in writing by the Commissioner after the coach's AD submits a written request for a waiver. Violations of this rule will result in a $10,000 institutional fine for a first offense and a $25,000 institutional fine for each subsequent offense.

5.7     **Athletics Directors and Senior Woman Administrators Mandatory Attendance Requirement**. ADs and SWAs must attend the Annual Conference Business Meeting (Spring Meeting). Exceptions to this attendance requirement must be submitted in writing and can only be granted by the Commissioner. Violations of this rule may result in a $10,000 institutional fine for a first offense and a $25,000 institutional fine for each subsequent offense.

5.8     **Administrative Group Meetings**.  The following administrative groups may hold Conference-sanctioned meetings at convenient, cost-effective locations or by videoconference: business managers, directors of compliance, directors of student-athlete support services, directors of student-athlete development, sports information directors, ticket managers, marketing coordinators, licensing coordinators, athletic development directors, athletics medical personnel, general counsels, athletics diversity and inclusion designee, chief diversity officers, mental health professionals, government relations directors, and game managers.

5.9     **Meetings with the Athletics Directors**.  A representative of each of the coaches and administrative staff groups as provided in Rules 5.6 and 5.8 shall meet with the ADs when requested.

5.10     **Expenses**.  All expenses of university personnel in attending the Conference meetings shall be paid by each Member Institution unless otherwise specified; provided, however, when a head coach represents Conference coaches in their sport at a meeting of the ADs at a site that requires travel, the Conference shall pay the expenses of such coach.

5.11     **Chairship**.  Chairs for each standing committee shall be elected by the members of each such group at its first meeting each fiscal year. The chair of each administrative group and coaches group shall be from the institution which chairs the Conference for the year. For those sports which do not have full membership, an alternate rotation shall be established.

5.12     **Agenda Items**.  Conference staff at the direction of the chair of each group specified in Rules 5.6 and 5.8 shall solicit agenda items from the members of his/her group from the other Member Institutions. Agenda items can also come from one of the Advisory Committees, Board of Directors or from the Commissioner. Conference staff is responsible for distributing the agenda prior to each meeting.



## SECTION 6- ELIGIBILITY

6.1 **Eligibility Rules**. A student-athlete must comply with appropriate minimum requirements of the NCAA and the Conference in order to be eligible for athletically related aid, practice, and/or competition in any intercollegiate sport.

    6.1.1 **Exception.** The Conference Rules in Section 6 do not apply to a sport if the Conference neither sponsors a championship nor schedules competition.

6.2 **Qualifiers and Nonqualifiers**. A student-athlete who enrolls, either full-time or part-time, at any Member Institution, must meet the following rules to be immediately eligible for financial aid or competition within the Conference. This rule applies to all student-athletes who enroll at a Member Institution, regardless of whether athletically related financial aid is awarded.

    6.2.1 **Initial Enrollees**. A nonqualifier student-athlete who initially enrolls at a Member Institution shall not be eligible for financial aid, practice or competition during the first academic year-in-residence.

    6.2.2 **Summer Term Prior to Initial Full-Time Enrollment Exception.** Summer enrollment prior to initial full-time enrollment does not constitute enrollment for the purposes of Rule 6.2.

    6.2.3 **Initial Eligibility Core-Curriculum Requirements Prior to Initial Full-Time Enrollment Exception**. Enrollment in courses that will be used to satisfy initial eligibility core-curriculum requirements prior to initial full-time enrollment does not constitute enrollment for the purposes of Rule 6.2.

    6.2.4 **Partially-Approved NCAA Initial-Eligibility Waiver Exception**. A nonqualifier student-athlete who initially enrolled at a Member Institution and received a partially-approved NCAA Initial-Eligibility Waiver is eligible to the extent authorized by the NCAA Initial-Eligibility Waiver decision and pursuant to NCAA Bylaws. A nonqualifier transfer who receives a partially-approved NCAA Initial-Eligibility Waiver remains subject to Rule 6.2.5.

    6.2.5 **Transfer Requirements**.

        6.2.5.1 **Four-Year College Transfers.** A nonqualifier, including those who received a partially-approved NCAA Initial-Eligibility Waiver, who transfers from a four-year college (regardless of prior enrollment at any other collegiate institution) to a Member Institution, shall not be eligible for financial aid or competition unless or until the following requirements have been met:

            (a) If at the time of transfer to a Member Institution the student-athlete would have been academically eligible to compete had the student-athlete remained at the four-year college where they most recently attended classes full-time, except that the student-

31

athlete is not required to have fulfilled percentage-of-degree requirements at the previous four-year college; or

(b)   If at the time of transfer to a Member Institution the student-athlete was not academically eligible at the previous four-year college, then the student-athlete may regain eligibility at the Member Institution following the conclusion of the first regular term subsequent to transfer after successfully meeting all applicable progress-toward-degree requirements at the Member Institution.

6.2.5.1.1   **2-4-4 Transfers**.  A nonqualifier who transfers from a two-year college to a non-Conference four-year institution and then to a Member Institution shall not be eligible for financial aid or competition unless or until the student-athlete:

(a)   Meets the requirements of Rule 6.2.5.3.1; or

(b)   Meets the requirements of Rule 6.2.5.1.

6.2.5.2   **International Institution Transfers**. A nonqualifier who transfers from an international collegiate institution shall be immediately eligible for financial aid, practice and competition, provided the student-athlete meets Rule 6.2.5.1.

6.2.5.3   **Two-Year College Transfers**.

6.2.5.3.1   **Nonqualifiers**. A nonqualifier, including those who received a partially-approved NCAA Initial-Eligibility Waiver, who transfers from a two-year college (regardless of prior enrollment at any other collegiate institution) to a Member Institution shall not be eligible for financial aid or competition unless or until the student-athlete:

(a)   Attended a two-year college as a full-time student for at least three (3) semesters; satisfactorily completed at least 48 semester hours of transferable degree credit acceptable toward any baccalaureate degree at the certifying Member Institution; and graduated from the most recent two-year college with a minimum cumulative grade-point average of a 2.5; or

(b)   Completes one (1) full academic year-in-residence.

6.2.5.3.2   **Academic Redshirts**. An academic redshirt who transfers from a two-year college (regardless of prior enrollment at any other collegiate institution) must meet the

32



requirements of Rule 6.2.5.3.1 to be eligible for financial aid and competition.

6.3    **Hardship Waivers.** Member Institutions shall submit to the Commissioner or designee for approval all petitions for hardship waivers prior to August 1 following the academic year in which the injury or illness occurred (with the exception of the two-year transfer petitions). Waivers received after August 1 may be acted upon by the Conference staff.

6.4    **Certification**.

6.4.1    **Certification of Eligibility**. The eligibility of each student-athlete is to be certified by a designated institutional officer outside the athletics department, according to a process approved by the FAR.  Certification of eligibility must occur prior to allowing a student-athlete to represent the institution in intercollegiate competition.

6.4.2    **Eligibility Reports**.  The record of the certification by the Certification Officer shall be filed with the institution prior to the first competition on a form maintained by the institution which shall include the approval of the head coach of the sport, the AD or his/her designee, the Certification Officer and the FAR and appropriate information to demonstrate the eligibility of a student-athlete.

6.4.3    **Financial Aid Reports**.  Each institution shall comply with all financial aid legislation of the NCAA and the Conference.  A copy of the Squad List for each sport shall be filed with the institution prior to the first competition for each sport and at the conclusion of the academic year.

6.4.4    **Participation Reports**.  Participation reports shall be filed with the institution's Director of Compliance by July 15 for each sport sponsored by the institution. The reports do not have to be filed with the Conference office.

6.4.5    **Accuracy of Certifications**. The sole responsibility for the accuracy of the reports and the eligibility of the student-athletes rests with each Member Institution.

6.5    **Recruiting Code of Ethics**.  One of the most visible areas in intercollegiate athletics is the recruitment of student-athletes by Member Institutions.  Staff members of the athletic departments have the primary responsibility for wholesome conditions and honorable conduct of all individuals participating in the recruitment of student-athletes.  Such staff members shall use their best efforts to ensure that the conduct of all individuals engaged in any form of recruitment for their Member Institution conforms to the following standards:

(a)    Knowledge of and conformance to all NCAA and Conference Rules governing recruiting;

(b)    Respect and consistent acknowledgement for the free choice of the

33



prospective student-athlete and his or her family; and

(c)     Precise discussions related to financial aid with the prospective student-athlete and his or her family as to the qualifying conditions, terms, and duration of the aid.

6.6     <u>Disciplinary Standards for Current Student-Athletes</u>. Each Member Institution shall address serious misconduct (as defined in Rule 6.9) issues involving its current student-athletes through applicable institutional procedures.

6.7     <u>Disciplinary Standards for Prospective Student-Athletes</u>. Member Institutions must exercise diligence to identify and address, through institutional procedures, serious misconduct issues involving its prospective student-athletes, including transfers. Prospective student-athletes, including transfers who have committed serious misconduct (as defined in Rule 6.9) shall not be eligible for athletically related financial aid, practice or competition.

6.8     <u>Compliance</u>. Each Member Institution shall adopt and implement, and document compliance with reasonable due diligence and other procedures, standards and definitions to effect Rules 6.6 and 6.7 at that Member Institution.

6.9     <u>Serious Misconduct Defined</u>. For purposes of Rules 6.6 and 6.7, serious misconduct shall be defined by the Member Institution but that definition must include sexual assault and domestic violence.

## SECTION 7- INTERPRETATIONS AND ENFORCEMENT OF RULES

7.1     **Interpretations of Rules**.  A request for an interpretation of a Conference Rule may be made orally or in writing by a member of the Board of Directors, FARs, ADs, SWAs or Directors of Compliance. The Commissioner shall have authority to interpret any Conference Rule and make any related rulings or may refer the matter to the FARs for action.  Also, the Board of Directors shall have authority to review decisions of the FARs sitting as an interpretative body, but shall not have authority to vote on matters involving individual student-athletes, including their eligibility.  The Conference staff will provide a written response and circulate the interpretation to the Conference membership.

7.2     **Self-Reporting NCAA Violations.**

7.2.1     **Level III Violations**.  Level III violations of NCAA legislation shall be self-reported by each Member Institution in accordance with current NCAA legislation, any applicable Conference rule, directive or interpretation.  Each report shall be signed by the institution's FAR.  Level III violations shall be filed with the NCAA.

7.2.2     **Potential Major Violations**.  On matters involving major violations or alleged major violations of NCAA rules, the involved Member Institution may conduct its own investigation and file a self-report acting in concert with the NCAA enforcement staff.  In addition, the involved Member Institution may proceed with the assistance of the Conference staff. In any event, the FAR or Director of Compliance of the involved Member Institution shall keep the Conference informed of significant developments.

7.3     **Reporting Alleged Violations by Another Member Institution**.

7.3.1     **Reporting**.  Information regarding alleged violations of NCAA or Conference Rules committed by another Member Institution shall be sent from the director of compliance or a senior athletics administrator from the institution making the allegation ("inquiring institution") to (i) the director of compliance or a senior athletics administrator at the institution about which the allegation is made ("responding institution") or (ii) reported to the Conference. The inquiry shall be specific and include any available documentation. If information is provided directly to the Conference, the Conference shall send the inquiry to the director of compliance and FAR at the responding institution.

7.3.2     **Findings**. The responding institution shall report its findings to the inquiring institution or Conference. The findings shall include if the standard penalties were applied and the date the violation was reported to the NCAA or Conference. If the findings were only reported to the Conference, the Conference shall forward the findings to the inquiring institution.

35

7.3.3    **Commissioner Review**.  The Commissioner (or his designee) may review the information and, in cooperation with the involved Member Institution, determine the merit of the alleged violation.  In the event the Commissioner deems it in the best interests of the Conference, the Commissioner may refer the matter involving possible violations of NCAA rules to the NCAA enforcement staff or direct the Member Institution to investigate and self-report pursuant to Rule 7.2.2.

7.4    **Ineligible Participation**. The Commissioner may impose sanctions when a student-athlete participates in a Conference contest or championship while ineligible as a result of: (a) an egregious violation of a Conference Rule or (b) a violation of an NCAA rule involving institutional culpability that is not subject to the jurisdiction of the NCAA Committee on Infractions. Results achieved by the ineligible student-athlete or the institution due to the ineligible participation may be vacated and any individual or team awards or trophies may be ordered returned to the Conference office.  Additional penalties appropriate for the circumstances may also be assessed.  If a Conference Rule has been violated and an institution seeks a waiver pursuant to Rule 7.6 to resolve eligibility issues of an involved student-athlete, action taken by the FARs on such a waiver request shall not affect the authority of the Commissioner to impose sanctions.

7.5    **NCAA Sanctions**.  If penalties imposed by the NCAA (or the Conference or self-imposed by the Member Institution) prohibit postseason competition in a particular sport, the Member Institution thus penalized shall not be eligible to participate in postseason conference championship events in that sport or serve as the automatic qualifier.

7.5.1    **Payment of Fines**.  In the event a Member Institution is fined by the NCAA, or is required to return funds to the NCAA as a result of sanctions against it or due to the ineligible participation of a student-athlete, that Member Institution shall be solely responsible for the payment of those funds.

7.6    **Waivers/Exceptions**.  The FARs shall have full power to grant waivers of and exceptions to Conference Rules for compelling, extenuating circumstances.  As to Conference eligibility matters, the FARs may delegate the authority to grant waivers on a temporary basis to the Interpretations Committee.

7.7    **Special Cases**.  The FARs shall have full power to act on all special cases not covered in these Rules.

7.8    **Enforcement**. If a violation of a Conference Rule has occurred, the Commissioner (or designee) shall have the authority to apply sanctions.

36



## SECTION 8 - DRUG TESTING

In an effort to deter the use of banned substances and to protect the health and safety of Big 12 student-athletes, each Member Institution must establish and implement an institutional drug testing policy that includes at a minimum drug education for all student-athletes.

37

DRUG TESTING



**SECTION 9- CHAMPIONSHIPS AND SCHEDULES**

9.1     <u>Championship Dates and Sites</u>.  The dates and sites for all Conference championships shall be recommended to the ADs by the SWAs, and then presented to the FARs for approval.

9.2     <u>Schedules and Competition</u>.  Scheduling of Conference athletic events and championships during the final examination period of any Member Institution is prohibited, unless an exception is granted by the FARs as a matter of scheduling necessity. The FARs shall approve any exception no later than spring business meetings for the upcoming academic year. Scheduling of all forms of practice and competition during these periods is strongly discouraged.  The rules and policies governing the making of schedules between Member Institutions are set forth in the Administrative Manual (as defined below in Section 10) for each sport.

9.3     <u>Postponed, Canceled and Forfeited Contests</u>.  A contest that is required by the Conference and counts toward Conference standings may be postponed with the consent of the ADs and/or designees of the involved Member Institutions and the approval of the Conference. Every effort shall be made to reschedule the postponed contest at the earliest possible date, provided such rescheduling does not increase overall missed class time or interfere with examination periods, or other sports' prohibitions.  If the two institutions cannot agree on a makeup date, the Commissioner will assign a makeup date for the contest that is postponed.  However, if no reasonable opportunity exists to reschedule the contest, the Commissioner shall have the authority to cancel the contest.  A cancellation will be considered a "no-contest".

<u>Impacted Travel with No Reasonable Efforts Made</u>. In the event a team's travel plans are disrupted or otherwise adversely impacted because of inclement weather or other unforeseen occurrence, and a scheduled contest is thereby not played as originally scheduled, the Member Institution traveling to the contest shall have forfeited the contest if the Commissioner determines that the traveling institution did not make reasonable efforts to arrive in time for the scheduled contest. The Member Institution traveling to the contest will be issued a loss and the host team will be issued a win (such win/loss will be applied to Conference standings). In such a case, ADs for the involved institutions will determine whether any reimbursement should be provided from the traveling Member Institution to the host Member Institution. If the ADs cannot reach an agreement concerning reimbursement, the Commissioner has the authority to render a final decision. In the event the Commissioner determines the traveling institution did make reasonable efforts to arrive in time for the scheduled contest, a "no-contest" shall be declared.

<u>Unable to Field a Team and No Extraordinary Circumstances Exist</u>. In the event a Member Institution is unable to field a team for a contest, and a scheduled contest is thereby not played as originally scheduled, the Member Institution unable to field a team shall have forfeited the contest if the Commissioner determines that



no extraordinary circumstances existed. The Member Institution unable to field the team will be issued a loss in the Conference standings and the opposing team will be issued a win (such win/loss will be applied to Conference standings). In such a case, ADs for the involved institutions will determine whether any reimbursement should be provided from the forfeiting Member Institution to the non-forfeiting Member Institution. If the ADs cannot reach an agreement concerning reimbursement, the Commissioner has the authority to render a final decision.

9.4     **Grounds**.   Member Institutions shall schedule and conduct all intercollegiate contests, where possible, on grounds either owned by or under the immediate control of one of the participating Member Institutions.  Football games may be played on a field which precedent has established as an alternate home field for that Conference opponent.

9.5     **Scheduling Obligations**.  Schedules for competition in all Conference sports shall be approved by the Conference office.  Once approved, Member Institutions are to adhere to such schedules and any violation of this policy will subject the involved Member Institution to Conference enforcement procedures.  Member Institutions may but are not required to exchange game contracts.

## SECTION 10- SPORTS REGULATIONS

10.1    <u>Sponsorship of Intercollegiate Sports</u>.  As an obligation of membership in the Conference, each Member Institution shall meet NCAA Division I Football Bowl Subdivision membership requirements, which includes sponsoring a minimum of 16 varsity sports, with the minimum of six (6) varsity sports for men and a minimum of eight (8) varsity sports for women.  Further, a Member Institution must sponsor a minimum of six (6) men's sports and six (6) women's sports from the list below.  Two (2) of the required men's sports must be football and basketball.  Of the required women's sports, one (1) must be basketball and one (1) must be volleyball or soccer.  Conference Rules shall apply to those sports in which the Conference sponsors a championship (regular season or postseason).

The following sports are sponsored by the Conference (indicates number of Member Institutions sponsoring the sport):

| Men | | Women | |
|---|---|---|---|
| Baseball | 14 | Basketball | 16 |
| Basketball | 16 | Beach Volleyball | 3 |
| Cross Country | 13 | Cross Country | 16 |
| Football | 16 | Equestrian | 3 |
| Golf | 16 | Golf | 14 |
| Swimming & Diving | 7 | Gymnastics | 6 |
| Tennis | 9 | Lacrosse | 3 |
| Track & Field- Indoor | 13 | Rowing | 4 |
| Track & Field- Outdoor | 13 | Soccer | 16 |
| Wrestling | 4 | Softball | 11 |
| | | Swimming & Diving | 10 |
| | | Tennis | 16 |
| | | Track & Field- Indoor | 16 |
| | | Track & Field- Outdoor | 16 |
| | | Volleyball | 15 |

10.1.1    <u>Conference Championship Sports Requirements</u>.  To host a Conference championship, the sport must satisfy "continuity-of-membership." "Continuity-of-membership" requires a minimum of four (4) Member Institutions to sponsor the sport on a varsity intercollegiate basis and to conduct Conference competition together in Division I. (Note:  The sports of equestrian and lacrosse are exempt and retain championship status pending further review).

10.1.2    <u>Notification Provision</u>.  To successfully manage its sponsored sports, Member Institutions must maintain a minimum number of sports per the Conference's sponsorship requirements in C.R. 10.1. If a Member Institution discontinues a Conference-sponsored sport, confidential and written notification at the onset of the process must be provided to the Commissioner.



**10.2** **Principles and Standards of Sportsmanship.** The regulation of the conduct of student-athletes, coaches, athletics department personnel and others shall be as provided in Section 11 hereto.

**10.3** **Administrative Sports Manuals.** The rules and policies governing each sport sponsored by the Conference shall be as set forth in the administrative manual for each such sport (each, an "Administrative Manual" and collectively, the "Administrative Manuals" or "General Administration Policies (GAP)").

**10.3.1** **Delivery and Effect.** The Administrative Manuals or GAP shall be forwarded via electronic transmission prior to the start of each sport regular season and shall have the status of Rules of the Conference.

**10.3.2** **Violations and Sanctions for Violations.** Violations of Administrative Manual rules are subject to the following procedural guidelines with the understanding that the Commissioner may impose more severe sanctions if warranted:

- First offense:  Private reprimand sent to AD;

- Second offense:  Private reprimand sent to President or Chancellor with a warning of an institutional fine if the violation occurs again;

- Third offense:  Financial penalty.

**10.4** **Travel Squad Restrictions.**

**10.4.1** **Regular Season Competition in Football.** The restriction set forth in C.R. 10.4.4 shall constitute the maximum travel squad size and shall apply to regular season Conference competition that is required and scheduled by the Conference office. This limit applies to all student-athletes accompanying the team to any away-from-home competition (e.g., redshirt, injured student-athlete). If additional student-athletes travel to the competition, it must be at their own expense. Additional student-athletes who have traveled to the competition may not dress in uniform, participate in pre-game warms-ups or compete under any circumstance.

**10.4.1.1** **One-Time Regular Season and Championship Exception.** In addition to the 74 football student-athletes in the travel squad, a Member Institution may travel and compete all student-athletes in their final year of eligibility as part of an expanded travel squad. This exception may be used each year at:

(a) One regular season game provided the Member Institution communicates such designation in writing to the Conference and host institution no later than the Monday preceding the game; and

(b) The Conference Championship.



**10.4.1.2** <u>Final Year of Eligibility and Medically Unable to Compete Due to Incapacitating Injury or Illness Exception.</u> A Member Institution may travel and exempt from the travel squad limit any football student-athletes in their final year of eligibility who has been deemed medically unable to compete the remainder of the season due to an incapacitating injury or illness. The student-athlete may not miss class to travel unless the missed class time is approved by the FAR in advance of the travel. The Member Institution must also be able to provide sufficient medical documentation of the incapacitating injury or illness upon request of the Conference.

**10.4.2** <u>Regular Season Competition in Sports Other Than Football</u>. The restrictions set forth in C.R. 10.4.4 shall constitute the maximum competition squad size and shall apply to regular season Conference competition that is required and scheduled by the Conference office. This limit applies to all participating student-athletes accompanying the team to any away-from-home competition. Non-competing student-athletes on the away team, who meet NCAA rules to receive competition-related expenses, may travel to regular-season Conference competition at the Member Institution's discretion but may not dress in uniform, participate in pre-game warm-ups, or compete in the competition.

**10.4.2.1** <u>Baseball and Tennis Exception.</u> The regular season restrictions set forth in C.R. 10.4.4 for baseball and tennis shall constitute the maximum competition squad size for both participating home and away teams. Non-competing student-athletes on the away team, who meet NCAA rules to receive competition-related expenses, may travel to regular-season Conference competition at the Member Institution's discretion but may not dress in uniform, participate in pre-game warm-ups, or compete in the competition.

**10.4.3** <u>Conference Championship in Sports Other Than Football</u>. For Conference postseason championships, the restrictions set forth in C.R. 10.4.4 constitute the maximum competition squad size for all participating teams, including a host institution. Additional student-athletes who are eligible for competition may travel to the championship at the Member Institution's discretion but may not dress in uniform, participate in pre-game warm-ups, or compete in the championship.



10.4.4    <u>Restrictions</u>.

| | | | |
|---|---|---|---|
| Baseball | 30 | Track & Field – Indoor | 26 |
| Basketball | 15 | Track & Field – Outdoor | 32 |
| Beach Volleyball | 14 | Rowing | 42 |
| Cross Country | 10 | Soccer | 28 |
| Equestrian | 32 | Softball | 25 |
| Football | 74 | Swimming | 24 |
| Golf | 7 | Tennis | 10 |
| Gymnastics | 18 | Volleyball | 18 |
| Lacrosse | 32 | Wrestling | 13 |

10.4.4.1    **Neutral Site Competition.** The restrictions set forth in C.R. 10.4.4 shall apply to both participating teams in a regular season neutral site competition that is required and scheduled by the Conference office, excluding any competition held at an off-campus location that serves as an institution's home arena.

10.4.4.2    **Swimming and Diving Exception.** Travel competition squads shall be limited to 24 equivalencies per championship meet. An entrant who swims shall be counted as (1) one competitor. Divers shall be counted as one-half (1/2).

**SECTION II- SPORTSMANSHIP AND ETHICAL CONDUCT**

11.1    <u>Principles of Sportsmanship and Standards for Conduct</u>. The essential elements of character-building and ethics in sports are embodied in the concept of sportsmanship and six (6) core principles: trustworthiness, respect, responsibility, fairness, caring and good citizenship. The Member Institutions place great importance on the principles of sportsmanship and the ideal of pursuing victory with honor in intercollegiate athletics. Participation in athletics, including as a fan, is a privilege and not a right.

11.2    <u>General Statements of Responsibility.</u> All those associated with the Conference athletics programs, including institutional personnel and fans, have the responsibility to conduct themselves consistent with the principles of sportsmanship. The Conference adopts the following minimum standards of responsibility.

    11.2.1    <u>Institutional Responsibility.</u> Member Institutions have the responsibility to take all reasonable steps to ensure that all institutional personnel, students and others in attendance at athletics events conduct themselves in a dignified manner and exhibit respect and courtesy toward game officials and those representing and supporting the opposing institution.

    11.2.2    <u>Athletics Department Responsibility</u>. The Member Institution's AD shall have the responsibility to effectively communicate to all athletics department personnel, coaches and student-athletes the basic principles of sportsmanship and standards for conduct. It must be made clear that concerns about Conference programs, such as officiating, and other Member Institutions must be addressed with the appropriate Conference or institutional staff and not in a public forum.

    11.2.3    <u>Game Management Responsibility</u>. The Member Institution's AD shall have the responsibility to take reasonable steps to create an environment that is fair and safe for visiting teams and officials. The AD, or his/her designee, must contact the visiting team's AD, or his/her designee, of a sport to address any issues and identify the game manager who can respond to concerns during the contest and the location of this individual during the contest. Each institution must arrange its seating at events so as to emphasize sportsmanship and minimize harassment of the visiting teams. Member Institutions must also have a protocol that ensures the protection of all participants and related personnel, particularly regarding court or field storming incidents.

    11.2.4    <u>Coach Responsibility.</u> Coaches, as role models, have the greatest influence over the young people in their programs and must continually emphasize the need for sportsmanship. Coaches have the responsibility to control the behavior of their student-athletes and staff members to ensure they are demonstrating respect for their opponents, the game officials and the game itself. Coaches must remain in their designated areas during a contest and refrain from behavior with the purpose of inciting the crowd toward negative

44

conduct.

**11.2.5** **Conference Responsibility.** The Commissioner shall have the responsibility to promote and enforce these principles and standards of conduct in connection with all athletics events involving a Member Institution, including competition against non-conference institutions. The Commissioner shall have broad authority to interpret the rules, review disciplinary action taken by Member Institutions and further sanction those deemed to have violated the rules.

**11.3** **Violations.** Violations of Section 11 and its subsets requiring actions by the Commissioner are:

**11.3.1** **Verbal or Physical Abuse.** Prior to, during and after a contest, coaches, student-athletes, institutional personnel, spirit squads and others in attendance are prohibited from committing verbally or physically abusive acts toward game officials or an opponent's team members, coaching staff, institutional personnel or fans.

**11.3.2** **Comments About Officiating.** Coaches, student-athletes and institutional personnel are prohibited from making any public comment regarding the game officials or the officiating at any contest. The public airing of officiating matters, whether directly or indirectly, during or after a game, verbally or by use of video, on or off the record, is prohibited.

**11.3.3** **Comments About Other Members.** Coaches, student-athletes and institutional personnel are prohibited from making public comments that are negative about other Member Institutions, including, but not limited to, negative comments, whether made directly or indirectly, about the personnel, student-athletes, support groups and other matters related to the institution.

**11.3.4** **Court and Field Storming.** A Member Institution must safely escort the visiting team, coaches, officials and other personnel off the playing surface, particularly in the event of a post-game celebration. All court and field storming incidents will be reviewed by the Conference.

**11.3.5** **Other Misconduct.** In addition to the specific authority set forth in Rules 11.3.1, 11.3.2, 11.3.3 and 11.3.4, the Commissioner has the absolute discretion to impose sanctions for other unsportsmanlike conduct that is contrary to or inconsistent with the principles and expectations set forth in Rules 11.1 and 11.2.

**11.4** **Processing of Possible Violations.** When a Member Institution has reason to believe that a violation of Section 11 and its subsets has occurred or is aware of an incident involving sportsmanship principles by either another member institution or its own institution, it shall be reported immediately to the Commissioner. Written communication between the Conference and the involved institution shall include copies to the president or chancellor and FAR.

45

11.4.1 **Report of Commissioner.** If the Commissioner believes a violation of these rules may have occurred, he/she or a designated Conference staff member will gather all information available for review of the matter. If the Commissioner believes that a violation occurred, a written report will be provided to the AD of the involved institution.

11.4.2 **Response by Institution.** After receipt of the Commissioner's report, the AD of the involved institution must submit, within 24 hours of receipt of the report, a written response to the Commissioner indicating the institution's position on the matter. See Rule 11.4.4 for exceptions to the 24-hour deadline.

11.4.3 **Final Decision by the Commissioner.** Within 24 hours of receipt of the institution's response, the Commissioner will send the final written decision to the AD of the involved institution, which will set forth the Commissioner's findings and penalty, if any, to be imposed. The institution will have 24 hours after receipt of the Commissioner's final decision to indicate in writing to the Commissioner whether it will appeal his/her decision under the provisions of Rule 11.5 below. See Rule 11.4.4 for exceptions to the 24-hour deadline.

11.4.4 **Delegation of Authority and Timing Exceptions.** The Commissioner or AD may designate another member of his/her staff to act on his/her behalf. In addition, the Commissioner shall have the authority to extend or shorten the 24-hour deadlines set forth above. In certain incidents where timing is of the essence, the Commissioner may initiate the process in Rule 11.4.1 verbally.

11.4.5 **Penalties.** The penalties that may be imposed by the Commissioner for violation of these rules may include, but are not limited to, private and public reprimand, institutional fines, and suspension from practice and/or competition.

11.4.6 **Violation by a Director of the Board, Other Institutional Personnel, Institutional Board Member.** The members of the Conference Board of Directors, high ranking institutional staff outside of athletics and institutional board members are obligated to adhere to these sportsmanship rules. The Commissioner shall submit a report to the full Board if it is alleged that such personnel have violated the rules. The Board has sole authority to consider the allegation and will determine whether a violation occurred and the penalty, if any, to be assessed.

11.5 **Appeals.** Only the president or chancellor of a Member Institution may submit an appeal on behalf of the institution or individual affected by the final disciplinary action of the Commissioner involving a suspension from competition or fine or forfeiture of a game. In all other cases, the Commissioner's decisions shall be final. An appeal must be submitted in writing to the

46



Commissioner within 24 hours after receiving the final decision. The Board of Directors, or its designated committee, shall be the body to consider the appeal and shall do so as expeditiously as possible. The Board may increase or decrease any penalty imposed by the Commissioner.

11.5.1    **Appeal Hearing.** Once an appeal has been timely filed, a hearing in person or by teleconference will be conducted by the Board as expeditiously as possible. A minimum of three (3) Directors of Member Institutions not involved in the incident(s) that resulted in the Commissioner's penalty will be required to hear the appeal. The president or chancellor making the appeal must participate in the hearing.

11.5.1.1    **Information Considered by Board.** The president or chancellor filing the appeal must submit a written statement outlining the reasons for the appeal to the other Directors at least 24 hours prior to the hearing. In addition, the Conference office will submit its report, along with other relevant material (e.g., video, media reports, statements by witnesses) for the Board's consideration.

11.5.1.2    **Hearing Process.** If the chair of the Board cannot participate, he/she will appoint a chair for the appeal hearing from the Directors who will hear the appeal. The president or chancellor making the appeal will make an opening statement after the hearing is called to order by the chair for the hearing. The Conference staff will participate and will issue an opening statement as well. The hearing then will be open for discussion between all parties participating. The chair then will excuse everyone from the hearing except the Directors, who will deliberate and make a determination to uphold, modify or reject the Commissioner's final decision. In modifying the decision, the Directors are authorized to decrease or increase the Commissioner's penalties. The chair will then contact the Commissioner to relay the Board's decision and the Commissioner will notify the president or chancellor who submitted the appeal.

11.5.2    **Final Decision.** The decision of the Appeal Board shall be final.

11.6    **Processing Sportsmanship Violations During Conference Championships.** In recognition that an expedient process is required during championship events to address possible violations related to Sportsmanship and Ethical Conduct, all decisions of the Commissioner, or designee, are considered final, and not subject to appeal.



**Standing Committees (Reporting Lines)**

~ Nominating Committee (FAR)

~ Audit Committee (Board)

~ Finance and Budget Committee (Joint Council)

~ Student-Athlete Advisory Committee (FAR)

~ Leadership Innovation Future Team (FAR)

~ Student-Athlete Health and Wellbeing Advisory Group (FAR)

**Administrative Groups**

~ Athletic Development Directors

~ Athletic Diversity and Inclusion Designees

~ Athletic Medical Personnel

~ Business Managers

~ Chief Diversity Officers

~ Directors of Compliance

~ Directors of Student-Athlete Development

~ Game Managers

~ General Counsels

~ Government Relations Directors

~ Licensing Coordinators

~ Marketing Coordinators

~ Mental Health Professionals

~ Sports Information Directors

~ Ticket Managers

48

# GENERAL
# INFORMATION



## POLICY ON GENDER EQUITY

The Conference and its Member Institutions will maintain and enhance the quality, excellence and traditions of the Conference with goals that can be measured, monitored, expanded and adjusted to address the participation opportunities and leadership roles of women in the Conference.  These goals would address equity so that the educational and athletic opportunities of all students are considered.  The guiding principles are as follows:

1. The Conference values the contributions and efforts of the student-athletes, coaches, staff and administrators and recognizes the richness such diversity brings to its Member Institutions.

2. The Conference affirmatively supports equitable participation opportunities for men and women student-athletes.  Member Institutions affirm their commitment to equity by providing fair distribution of resources, facilities, services and opportunities to men and women students, coaches and staff.

3. The Conference shall not schedule (nor participate in) any regular or postseason competition or event at sites, venues or facilities which have membership restrictions or practices which result in discrimination on the basis of gender.

4. Gender equity is a goal of the Conference and is a mutual endeavor of the Member Institutions.  Gender equity is an atmosphere and a reality where a fair distribution of overall athletic opportunity and resources is available to women and men, and where no student-athlete, coach or athletics administrator in the athletics program is discriminated against on the basis of gender.

5. Each Member Institution will identify an SWA to represent it at SWA meetings to be held in conjunction with the regular Conference meetings. At these meetings, the SWA will meet as a group to consider items relative to the welfare and advancement of women's athletics in the Conference.  These items and other matters will be discussed with the ADs and FARs at Joint Meetings.

6. SWAs will be included in the governance structure of the Conference.

7. The Member Institutions will affirmatively seek to hire women, where possible, in all positions and areas of their athletics departments and the Conference office.  The Conference will also recognize and support women currently involved in the athletics departments.

8. The Conference will increase the recruitment, training and employment of women in the officiating and operations of all Conference events.

9. The Conference and its Member Institutions will seek to comply with the provisions of Title IX.

## POLICY ON DIVERSITY

Consistent with NCAA Constitution 2.7, the Conference and its Member Institutions are committed to cultural diversity, promoting respect and sensitivity to the dignity of every person and fostering participation of all in competition, administration and governance.  It is the obligation of each Member Institution to refrain from discrimination prohibited by federal and state law, and to demonstrate a commitment to fair and equitable treatment of all student-athletes and athletics department personnel.

Consistent with this fundamental philosophy, the Conference shall:

1. Encourage its Member Institutions to increase the representation of ethnic and gender minorities in athletics department leadership positions.  In that regard, Member Institutions shall be encouraged to promote the hiring of ethnic and gender minority coaches and administrators, and to make full use of NCAA enhancement programs.

2. Establish internship and scholarship programs to enhance employment opportunities for ethnic and gender minorities in athletics administration.

3. Support diversity at Member Institutions and enrich the understanding between its staff members and the Member Institution's community through sponsorship of symposiums, workshops, and clinics.

4. Encourage an atmosphere throughout the Conference among staff and student-athletes that demonstrates respect and support for each individual.  As such, within the context of Conference events, the Conference will not tolerate disparaging comments, remarks, or jokes about any group of people including racist, sexist, or homophobic comments, remarks, or jokes.