# EXHIBIT 4



## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

June 11, 2026

**<u>VIA EMAIL</u>**

Mr. Brett Yormark
Commissioner, Big 12 Conference
5215 N. O'Connor Blvd., Suite 1650
Irving, TX 75039
byormark@big12sports.com

Mr. Douglas A. Girod
Chair of Board of Directors, Big 12 Conference
230 Strong Hall
1450 Jayhawk Blvd.
Lawrence, KS 66045
kuchancellor@ku.edu

**Re:    Notice re Big 12 Conference's Response to *Sorsby v. NCAA***

Dear Messrs. Yormark and Girod,

We write on behalf of Texas Tech University ("Texas Tech") in response to the discussions among the Big 12 Conference ("Big 12" or "Conference") and its member institutions following the June 8, 2026 Temporary Injunction Order in *Sorsby v. NCAA*, No. DC-2026-CV-0791 (Tex. Dist.), which—in pertinent part—enjoins the NCAA from "[p]rohibiting [Mr. Sorsby] from practicing, playing, or otherwise participating on Texas Tech's football team for the 2026 football season," subject to certain conditions ("Order").

We are aware that the Big 12 is considering invoking Bylaw 3.6[1] of the Big 12's Bylaws to sanction Texas Tech for respecting the Order and continuing its support of Mr. Sorsby as a student-athlete. This letter serves to notify the Big 12 that any such action would be unlawful and would expose the Conference to substantial liability.

Any sanction against Texas Tech for acting consistent with the Order would be a *per se* violation of federal and state antitrust laws—a naked horizontal agreement among competitors to disadvantage Texas Tech by cutting off access to the resources it needs to compete. *See Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985) ("Cases to which this Court has applied the *per se* approach have generally involved joint efforts by a firm or firms to disadvantage competitors by [] directly denying . . . relationships the competitors need in the competitive struggle. In these cases, the boycott often cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete.") (citations and quotation marks omitted); *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 848 (5th Cir. 2015) ("[G]roup

---

[1] Bylaw 3.6 purports to permit the Conference to sanction a member school if a "Supermajority of Disinterested Directors," in its "sole discretion," "determines that such Member has . . . engaged in any action or a course of conduct materially adverse to the best interests of the Conference taken as a whole . . . [or] otherwise taken any action or omitted to take an action that . . . merits Sanctions."

Messrs. Brett Yormark and Douglas A. Girod
Big 12 Conference
June 11, 2026
Page 2

boycotts involving a horizontal conspiracy to foreclose a market participant are considered per se violations of [the Sherman Act].”); Tex. Bus. & Com. Code § 15.05(a) (“Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful.”); *Red Wing Shoe Co. v. Shearer's, Inc.*, 769 S.W.2d 339, 341 (Tex. App. 1989) (“Horizontal combinations are cartels or agreements among competitors that restrain competition among enterprises at the same level of distribution. These are ordinarily illegal *per se*.”); *see also, e.g.*, *Shields v. World Aquatics*, 2024 WL 4211477, at *1 (9th Cir. Sept. 17, 2024) (reversing summary judgment for defendant and finding that “[p]laintiffs ha[d] created a triable issue as to whether [defendant's rule] constituted a per se unlawful group boycott by preventing member federations and swimmers from doing business with ISL without risking draconian sanctions”). The *per se* rule applies without regard to any asserted procompetitive justification for the Big 12's conduct. The Conference would face exposure to treble damages, including for Texas Tech's lost football revenues, damages to its alumni contributions and damages to its recruitment, plus attorneys' fees. The total exposure—for both the Big 12 and its members, joint and severally—will be substantially more than $200 million. *See* 15 U.S.C. § 15(a).

Beyond its antitrust exposure, the Big 12 would also face liability for breach of contract and tortious interference. Any sanction that results in the cancellation, forfeiture or alteration of Texas Tech's as-scheduled games would constitute a breach of the Big 12's contractual obligations to Texas Tech. Additionally, any action that disrupts or interferes with Texas Tech's existing or potential contracts associated with its football team—including sponsorship arrangements, ticket-sale commitments, alumni contributions, and other commercial relationships—would give rise to claims for tortious interference with existing or prospective contractual relations.

Texas Tech is confident the Big 12 will choose to act within the confines of the law and respect both the judicial process and its own Rules and Bylaws. However, should the Big 12 seek to sanction Texas Tech for acting consistent with the Order, Texas Tech will pursue all legal avenues to protect its interests and those of Texas Tech's student-athletes.

Please distribute this letter to the Big 12 Board of Directors.

Sincerely,

Thomas D. York
Chief, Antitrust Division
Kimberly Gdula
Chief, General Litigation Division
Office of the Texas Attorney General
300 W. 15th Street
Austin, TX 78701