# EXHIBIT 5



**GENTNER DRUMMOND**
**ATTORNEY GENERAL**

June 12, 2026

**VIA EMAIL**

Mr. Brett Yormark
Commissioner, Big 12 Conference
5215 N. O'Connor Blvd., Suite 1650
Irving, Texas 75039
byormark@big12sports.com

Dr. Douglas A. Girod
Chairman, Big 12 Conference Board of Directors
Chancellor, The University of Kansas
230 Strong Hall
1450 Jayhawk Boulevard
Lawrence, Kansas 66045
kuchancellor@ku.edu

Re:    **June 11, 2026, Letter from the Office of the Attorney General of Texas**

Dear Commissioner Yormark and Chairman Girod:

My office is aware of a letter sent to the Big 12 Conference from the Texas Attorney General's Office asserting that the Big 12 would violate federal and state antitrust laws by sanctioning Texas Tech. Oklahoma is home to a Big 12 member institution, Oklahoma State University, and my office has a direct interest in the integrity of Conference competition.

The claims asserted in the letter are meritless. The idea that the Big 12 may not sanction the actions of one of its members under an agreed-upon preexisting contract is facially absurd. The Supreme Court has squarely rejected the letter's central premise that conference discipline amounts to a per se antitrust violation. Because horizontal cooperation among member institutions is essential to producing college athletics at all, restraints adopted by athletic associations are analyzed under the rule of reason. *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 100–03 (1984); *NCAA v. Alston*, 594 U.S. 69, 81–82 (2021). Indeed, *Board of Regents* recognized that rules preserving the integrity of athletic competition serve legitimate procompetitive ends. 468 U.S. at 117. The Big 12 conference, like all intercollegiate athletic conferences, "is a private association that adopts and enforces its own rules." *NCAA v. Farrar*, 402 So. 3d 1251, 1264 (Miss. 2024). In other words, a conference and its member institutions possess a "contractual relationship" sufficient to support enforcement authority. *NCAA v. Miller*, 795 F. Supp. 1476, 1486 (D. Nev. 1992); *see also id.* ("Every [conference] member has voluntarily and contractually agreed to abide by these rules and regulations."). "By adopting and enforcing its bylaws," as with Bylaw 3.6, the Big 12 conference is simply "upholding integrity and fair play among [its] membership," rather than "causing damage and loss" to Texas Tech. *Farrar*, 402 So. 3d at 1264; *see also Hairston v. Pac. 10 Conf.*, 101 F.3d 1315, 1320 (9th Cir. 1996) ("Appellants have failed to show that the penalties the [conference] imposed

constituted an unreasonable restraint of trade."). The letter's citation to generic propositions of antitrust law holds no weight. If Texas Tech pursues such claims, they will fail.

I write further to recommend that the Big 12 take action against Texas Tech under Bylaw 3.6, which allows the Conference to sanction member schools if a "Supermajority of Disinterested Directors determines" that a member school has "engaged in any action or a course of conduct materially adverse to the best interests of the Conference as a whole." Sadly, that fits Texas Tech to a T. Its actions in obtaining eligibility for Brendan Sorsby—an athlete the NCAA declared permanently ineligible for extensive wagering on college sports, including games involving his own team—have constituted a shameful chapter in the story of college football. Texas Tech has acted in a manner adverse to the Big 12 and the integrity of college football as a whole.

Brendan Sorsby broke NCAA rules by wagering roughly $90,000 on sports over four years. He even bet forty times on games involving his own team during his freshman season at Indiana. It goes without saying that an athlete betting on games that his team is competing in threatens the integrity of the game. Fans purchase tickets to games and pay ever-growing prices to watch them on television on the understanding that they are watching an honest, fair sporting event. Athletes gambling on their own games imperils that entire system. That is why leagues have always taken a hard line to punish athletes impermissibly gambling on sports.

But Texas Tech has not done that. It has shirked responsibility by running with a bogus claim to a friendly court. Its leadership has prioritized winning over sport, over honor, and over integrity. If Texas Tech will not do the right thing, the Big 12 should. Texas Tech should be sanctioned. I also note that the injunction granted to Sorsby applies only to the NCAA. It does not impede the Big 12 from suspending Sorsby. The Conference is not a party to that proceeding, is not enjoined by the order, and its independent enforcement of its own bylaws is not action in concert with the NCAA. My office stands ready to assist the Big 12 if Texas Tech's leadership attempts to punish the Conference for doing the right thing.

Sincerely,

GENTNER DRUMMOND
*Attorney General*